Txighman C. J.
This is an action on the case brought by Caleb Baldwin, the plaintiff below, against James Downing, the defendant, for disturbing him with force and arms, &c. in the exercise of his right to cany a stream of water through the land of the defendant. The president of the Court of Common Pleas, at the request of the defendant’s counsel, filed of record, his charge delivered to the jury according to the act of 24th February, 1806, sect. 25, but no' bill of exceptions was tendered by the counsel, or sealed by the judge. It lias been very strenuously argued by the counsel for the defendant, in' error, that this court can take'no notice of the judge’s charge, because it has not been brought on the record by a bill of exceptions. The act of assembly directs, that in all cases in. which the opinion of the court shall be delivered, if either party require it, it shall be the duty of the judges' respectively, to reduce the opinion so given, with their reasons therefor,- to writing, and fie the same of record in the cause. The act does not say what shall be the consequence of this.; it .makes no mention of. a writ of error or bill of exceptions. But it is contended, that it was not meant, that any error in an opinion filed of record should be taken ad *302 vantage of in any other manner than by a bill of exceptions. This construction has never yet been put on the act. The point indeed has never been made, but it has frequently been taken for granted both by court and counsel, that any error in an opinion filed of record may be taken advantage of on a writ of error, without a bill'of exceptions, and upon full consideration, I am of opinion, that the practice which has taken place is according to the true meaning of the act of assembly. The reason of introducing a bill of exceptions was, that the opinion excepted to, could not otherwise appear upon the record. The statute does not say that a writ, of error shall lie on the bill of exceptions. But inasmuch as a writ of error lies at common law, and the effect of it is to bring the record before the superior court, the judges finding the bill of exceptions on the record are bound to take notice of it. Now to apply that principle to the present question. The act of assembly directs the opinion of the judge to be filed of record ; it becomes then a part of the record, and being so, the superior court must of necessity take notice of it. It is surely as much a part of the record as a bill of exceptions, and I think rather more so, because a bill of exceptions is not part of the body of the record, but annexed to it, and may be withdrawn by the party who tendered it. But an opinion filed by positive command of law, is of the body of the record, and must so remain. It is objected,thatthisis giving the judges adangerous power, because they may state the case unfairly; but it is giving them no power, but what they possess on a bill of ex-t ceptions, for they may refuse to seal the bill unless it contains' such a statement as they think correct. It is objected álso, that the act of assembly only directs the opinion of the judge to be filed, but is silent as to the facts on which the opinion is founded. But I apprehend it must be intended, that in all cases the judge should place upon the record such facts as are necessary to explain his opinion, and in so doing he will naturally act in concert with the counsel, unless it should appear to him, that they ask what is not agreeable to truth, and in such cases, he will at his own. peril state the facts as he thinks right. The statute which gives the bill of exceptions, says nothing about stating the facts, but only that the party may propound his exception; but in propounding the exception, it was found necessary to introduce the fact on which the judge’s opinion was founded. So it has been the prac-
4 *303 tice upon the act of assembly to bring the facts on the record, and there is no greater difficulty in doing it, than in drawing" up a bill of exceptions. It is the business of the party who objects to the opinion of the court to see that the necessary facts are placed on the record, for if they are not, it cannot appear that the opinion was erroneous, and therefore the judgment will be affirmed of course. It will be necessary therefore to inquire, whether on the record before us, there be such a statement of facts as to make the judge’s opinion fully intelligible. That part of the charge which is objected to is in the following words, “ The next inquiry is, has Caleb “ Baldwin been disturbed, &c.” [The Chief Justice then read the part of the charge excepted to.]
The judge without saying what has been proved, leaves it to the jury to decide the facts, and states the result of law, in case they shall be of opinion that certain facts existed. This Is no speculative opinion, but one which bears immediately upon the issue joined. It must be taken for granted,.that evidence had been given, from which the jury might or might not find, that the plaintiff had asked of the defendant permission' to exercise the right claimed by him and been refused. This is as necessarily to be implied from what the judge said, as if .the evidence had been inserted on the record. We know not what was the opinion of the jury as to the fact, but it is certain, that if the charge7was erroneous, the juiy were misled as to the law, and therefore it will be impossible, to prove that the verdict was not founded on an error in law. I am clearly of opinion, that the judge has very candidly and fairly placed on the record- such a referencé to facts as leaves no doubt concerning the points on which his charge was founded, nor any doubt that ,those points were material to the issue. Let us consider then, whether the .law was correctly laid down, when it was said, that the refusal óf permission to exercise a right was a disturbance of that right. A refusal unaccompanied with threats express, or implied, is a bare-negation, it has nothing active in its nature, nor can it fairly be implied, that the person who refused, had it in contemplation to do any unlawful act. He might doubt the right of him who asked permission, and intend to take his remedy at law, in case that person proceeded to the exercise of the right; and surely such an intent could be no legal disturbance. The plaintiff who claimed the right, might have *304 proceeded to exercise it at his peril. Neither was the defendant bound to answer his question when permission was asked, or give permission to do a thing, which if legal required no permission. By asking a question of this kind, a man is reduced to the dilemma of either abandoning his right by granting permission, or making himself subject to damages in an action for disturbance, if he refuses permission. This appears to me to be unreasonable, because it may involve the most peaceable man in damages, without any act or threat or even intention of disturbance. It is for him who claims a right to proceed to the exercise of it, and then it lies with the adverse party either to permit the exercise, or to oppose it without violence, or to seek redress by an action 'at law. I am, therefore, of opinion, that the law was carried too far, when it was said, that a bare refusal amounted to a disturbance. The judgment of the Court of Common Pleas must be reversed, and a venirefacias de novo awarded.
Yeates J.
The defendant in error has laid in his declaration three different counts, charging the plaintiff in error, with having with force and arms, &c., unlawfully disturbed him in his right to dig a race on the now plaintiff’s lands. The learned judge on the trial, instructed the jury in his charge, [Judge Yeates here read the part of the charge said to be erroneous.]
I do not take this doctrine to be correct in the latitude which the instruction naturally imports. 'Mere words are no forcible disturbance, unless accompanied with threats: They would not justify a binding to the peace. It is readily admitted, that actual force need n,ot be proved, in order to support this action ; but there should have been an attempt to enter, which if resisted with demonstrations of intended violence, in case such attempt was persisted in, would be sufficient. The declaration here states a disturbance with force and arms, which is more than mere inducement to 'the action: The violence being laid, ought to have been proved by something more ’than a refusal of permission to enter. Such permission was unnecessary, if the party asking it had a legal right of entry; and a prudent man may deem it unadvisable to give a license to another, to enter on his land for a particular purpose, especially when he means to contest *305 such right, or its extent, leaving to the claimant his own mode of prosecuting his claim, and reserving to himself an appeal.to the laws if it should be rendered eligible.
But it has been objected, that the evidence not having come up with the record, this Court cannot pronounce on the propriety of the charge, which must necessarily refer to all the testimony given on the trial. The answer is, here an abstract independent legal question was decided by the court, excluding from the jury all consideration of force, and broadly stating the refusal of permission to enter, to be a disturbance per se. This Court cannot say, what effect a remark so general in itself would have on the minds of the jurors; as was observed by the court in Biddis v. James.
It has been further zealously contended, that this case is not open to review on error brought, as the record does not come before us on a bill of exceptions. The charge of the court was filed at the instance of the counsel for the plaintiff in error, under the 25th section of the act of 24th February, 1806, which directs the decision of the judges with their reasons to be filed of record in all cases, wherein it shall be required by either party or their counsel, . The statute of 13 Edward.1, gave the bill of exceptions.in order that the points determined should be introduced into the record, and be decided on by a court of error. The bill of exceptions would contain nothing more, than is spread on the record here upon the charge of the court on a mere question of law, and upon the whole record we are bound to judge. I take this to be the meaning of the legislature in the section under consideration, superadded to the high responsibility to which judges are subjected. Such has been our practical construction of the act. It did not intend to create new causes of error, nor to limit the exercise of discretion as it respects new trials, postponing or ordering on causes for trial, or other matters collateral to the merits of the cause : But it left the power of the Superior Court as to a review, in the same manner as if the record was brought before them on a bill of exceptions, sealed at the trial. Upon the whole, I am of opinion, that the judgment l^elow be reversed, and a new trial awarded.
Brackenridge J.
The principle stated in the charge is, that if a man has a right to enter on the land of another for a particular purpose, as to dig a race for conveying water *306 through it, and he makes a direct application to the owner of the land for permission to enter for that purpose, informing him of his desire to enter for the exercise of that right, and the permission is refused, it is a suffcient disturbance of the rigfit to authorise an action. It is not necessary to expose himself to violence by actually attempting to enter on the land, and being turned off. To this doctrine I assent. For does not refusing permission undér these circumstances imply a determination to oppose and resist ? Is it necessary that a person so claiming a right to enter, must actually enter, and commit what may turn out to be a trespass; and that the, person in possession must commit what may turn out to be a breach of the peace, before the right can be legally put in a way to be tried ? When the person in possession makes a demonstration of opposing either by word or act on the ground, it is a disturbing, if the person claiming a right has made a demonstration of entering, though actual force has not been used by the person in possession. “ I will keep “ possession in spite of all men,” is said to be a sufficient evidence of actual violence in maintaining a possession, accompanied with a demonstration of intended resistance; but independent of such demonstration, if the words bespeak a determination to oppose, or not permit, that is not to suffer or endure, but to yield only to the law, it is enough to justify the recurring to the law, and gives the foundation of an action for disturbing the right. A man cannot dig a race without labourers, or at least, he usually employs labourer’s to enter with him; and he may not be able to procure labourers that may be willing to enter, and run the risk of being joined in an action of trepass with the employer. And is not this a disturbance of the exercise of the right, if he has any, of him who is out of possession, and wishes to dig the race ? The vi et armis in trespass is short of that actual breach of the peace, which subjects to an indictment, whether in obtaining or maintaining a possession, and in the action for a consequential damage founded on a trespass it is the same. And refusing permission to exercise a, right is a denial of the right itself, and a disturbance though there has been no pushing in the face, or shoving off the ground, in the case. It is so understood in that motto prefixed to the Naval Register Of Britain;
*307 « The ocean wave is Britain’s wide domain,
« And not a sail but by permission spreads.”
The word-permission may therefore seem to carry with it something more than the mere withholding an assent, and to be equivalent to an order not to do, and under the circumstances to be able, to enforce, must carry with it obstruction, impediment, &c. But here were there any difficulty, the facts not coming up by a bill of exceptions, I should take it, that they wére such as warranted the charge, and the finding of the jury, and should affirm the judgment of the court below*
Judgment reversed, and a venire tie novo awarded.