Mr Justice WashingtoN
 

 delivered the opinion-of the Court.
 

 This is a writ of error to the supreme court of Pennsylvania, An ejectment was commenced by the defendant in error in the court of common pleas against' Elisha Satterlee to recover the land in controversy, and upon the motion of tfré plaintiff in error, hé was admitted as her landlord, a defendant to the suit. The plaintiff, at the trial, set up a title under a warrant dated the 10th of January 1812, founded upon an improvement in the year 1785, which it was admitted was under a Connecticut title, and a patent bearing date the 19th of February 1813.
 

 ■The defendant claimed title under a patent issued to Wharton in the year 17P1, and a conveyance by him to John F. Satterlee in April 1812. It was contended on the part of the plaintiff, that admitting the defendant’s title to .be the oldest and best, yet he was stopped from setting it. up in that suit, as it appeared in evidence that he had come into possession as tenant to the plaintiff sometime in the year
 
 *408
 
 1790. The court of common pleas decided in favour of the plaintiff upon the ground just stated; and judgment was accordingly rendered for her. Upon a writ of error tó the supreme court of that state, that court decided, in June 1825, 13
 
 Serg. & Rawle,
 
 133, that by the settled law of Pennsylvania, the Relation, of landlord and tenant could not subsist under, a Connecticut title ; , upon which ground the judgmént was reversed and a venire, facias de novo was awarded.
 

 On the Sth of April. 1826, and before the second trial of. this cause took place, the legislature of that state, passed a láwin substance as follows,'viz. ,fthat the relation of'landlord and tenant shall exist, and be held as fully and effectually between Connecticut settlers and Pennsylvania claimants, as' between other citizens of this commonwealth, on the trial of any cause now pending, or hereafter to be brought within this,commonwealth, any law or usage to the contrary notwithstanding.”
 

 Upon the retrial of this cause in the inferior court in May 1826, evidence was given conducing to prove, that the land in dispute was, purchased of Wharton by Elisha Satterlee, the father of John F. Satterlee, and that by his direction, the conveyance was made to the son. It further appeared in evidence, that the son brought an ejectment against; his father in the year 1813, and’by some contrivance between .those parties,, alleged by the plaintiff below to be merely colourable,and fraudulent, for the purpose of depriving: her of her possession, obtained .a judgment and execution thereon, under which the possession was delivered to. the plaintiff in that suit, who immediately afterwards leased the premises to the father for two lives," at a tent of one "dollar per annum. The fairness of the transactions was made a question on the trial,' and it was asserted by the plaintiff that, notwithstanding the eviction of Elisha Satterlee under the above proceedings, he still continued to be her tenant.
 

 The judge, after noticing in his charge the decisiofi of the supreme court in 1825,. arflj:the act of assembly before recited", stated to the jury the general principle of law, which prevents a tenant from controverting the title of his
 
 *409
 
 landlord ;by-showing it to be defectivo, the exception to that principle where the landlord claims under a Connecticut title, as laid down by. the.above decision, and the effect of the act of assembly upon that decision, which act he pronounced to be binding on the Court. He therefore concluded, and so charged the jury, that if they should be satisfied.from the evidence, that the transactions between, the two SatterT lees before mentioned, were bona fide, arid that John F. Satterlee was the actual, purchaser of the land; then the der fe adapts might set up the eviction as a bar to the plaintiff’s'1 recovery as landlord. But that if the jury should be satisfied that.those transactions were; collusive,, and thatJElisha Sat-teriee >was in fact the .real purchaser, and the. name of ..his son insetted in the deed, fori the fraudulent, purpose of destroy.ing.thérightofthe.plaintifEas landlord; then the merely claiming under a Connecticut title, wóuld not deprive her of her .right to recover m that suit.
 

 To this charge, of which the substance. only has .been stated, an exception was taken, and the whole of it is spread upon the. record- The jury found a verdict for the plaintiff; and judgment being rendered for her, the cause was .again taken to .the supreme court by a writ of error.'..
 

 The only question which occurs in this cause,, which it. is competent to this .Court to decide is, whether the statute of Pennsylvania which has been mentioned,, of the 8th of April 1826, is or is not objectionable, on the ground of its repug-nancy, to the constitution, of the United States.1? . But before this inquiry .is gone into, it will be proper to dispose of a preliminary objection made to the jurisdiction of this Court, upon the ground that there is nothing apparent on this record to raise that question, or. otherwise to bring this case within any of the provisions of the 25th section of the. judiciary act of 1789.
 

 Questions of this nature ¡have , frequently occurred in this Court, and- have given occasion for a1 critical examination of the above section, whíchhas resulted in the adoption of certain principles of construction applicable to it, by which the objection now. to be considered may, without much difficulty, be.-decided. 2
 
 Wheaton,
 
 363. 4
 
 Wheaton,
 
 311. 12
 
 *410
 

 Wheaton,
 
 117. One of those principles is, that if it sufficiently appear from the record itself, that, the repugnancy of a statute of á state to the constitution of the United States was drawn into question, or that that question was applicable to thé case, this Court has jurisdiction of 'tjie cause under the section of the act referred toalthough the record should not, in terms, state a misconstruction , of the constitution of the United States', or that the repugnancy of the statute of the state to any part of that constitution was drawn into question.
 

 Now it is manifest from this record, not only that the constitutionality of the statute of the 8th of April 1826, was drawn into question, and Was applicable to the.case, but that it was so applied by the judge, and formed the basis of his opinion to the jury, that they should find in favour of the plaintiff, if in other respects she was entitled to a verdict. It is equally manifest that the right of the plaintiff to recover in that action depended on that statute; the effect of which was to change the law, as the supreme court had decided it to be in this very case in the year 1825. 13 S. &
 
 R.
 
 133.
 

 That the'Charge of the judge forms a part of this record is unquestionable. It was made so by the .bill of exceptions, and would have been so without it,, under the statute of the 24th of February 1806, of that state ; which directs, that in all cases in which the opinion of the Court shall be delivered, if either party require if, it is made the duty of the judges to reduce the opinion, with their reasons therefor, to writing, and to file the same of record in the cause. In the case of Downing
 
 vs.
 
 Baldwin, 1
 
 Serg.
 
 &
 
 Rawle,
 
 298, it was'de.cided by the supreme court of Pennsylvania, that the opinion so filed becomes part of the record, and that any error in it may be taken advantage of on a writ of error without a bill of exceptions.
 

 It will be sufficient jto add that this opinion of the court of common pleas was, upon , a writ of error, adopted and affirmed by the - supreme court; .and it is
 
 the judgment
 
 of1 that court upon,thé pésint so decided by the inferior court j and not Ihe
 
 reasoning of the judges
 
 upon it, which this Court is now called upon to revisq.
 

 We come Aow to the main question in this cause. Is the
 
 *411
 
 . act which is objected to, repugnant to any provision of the constitution of the United States *? It is alleged to be so by the counsel for the plaintiff in error, for a variety of reasons ; and particularly, because it impairs the obligation of the contract between the state of Pennsylvania, and the plaintiff who. claims title under her. grant to Wharton, as well as of the contract between Satterlee and Matthewson; because it. creates a contract between parties where none previously existed, by' rendering that a binding contract which the law of the land had declared to be invalid; arid because it operates to divest and destroy the Vested rights of the plaintiff. Another objection relied upon is, that in passing the~act in question, the legislature exercised those functions which belong exclusively to the judicial branch of the government.
 

 Let these objections be considered. The grant to Wharton bestowed upon him á fee simple estate in the land granted, together with all the rights, privileges and advantages which, b.y the laws of Pennsylvania, that instrument might legally pass. Were any of those rights, which it is admitted vested in his vehdee or alienee," disturbed, or impaired by the act under consideration It does not appear from the record', or even from the reasoning of the judges of either court, that they were in ány instance denied!, or. even drawn into question. Before Satterlee became entitled to any part of the land in dispute under Wharton, he had voluntarily entered inté a contract with Matthewson, by" which, he became his tenant, under a stipulation that either of the parties might • put an end to the tenancy at the termination.of any one year.. Under this new contract, which,, if it was ever valid, was still subsisting and. in full force at the time when Satterlee acquired' the title of Wharton, he exposed Himself to the operation of a certain principle of the common law, which estopped him from controverting,, the title of his landlord, by setting up a better title to the land in himself, or one outstanding’ in some third person.
 

 It is true that the supreme court of ihe state decided, in the year 1825, that this contract, being entered into with, a person claiming under a Connecticut title, was void; so that
 
 *412
 
 the principle of law which has been mentioned did not apply to it. But the legislature afterwards declared by ;the act under examination, that'contraéis of that nature were valid, and that the relation.of landlord and tenant should exist, and be held effectual, as well in contracts of that description, as in those between other citizens.of the state.
 

 Now. this.law may be censured, as it. has been, as an un.wise,and unjust exercise of legislative, power; as retrospective in its operation.j as the exercise,. by the legislature, >f a. judicial function; and; as creating a contract between parties where none previously existed. AH this may be admitted ; but the question which we are now -considering is, does it impair the: obligation ;of tne contract between the' state and Wharton, or .his alienee.1? Both the decision of the supreme court in 1825, and th. s act, operate, not upón that, contract, but upon the subsequent contráct between Satterlee and Matthewson.. No question - arose, or was decided, to disparage-the title of Wharton, or of Satterlee as his vendee. So, far from it, that the judge-stated in\ his charge to the jury, that if the transactions between John F. Satterlee and Elisha Satterlee were fair,- then the elder title of the, defendant must prevail, and he would be entitled' to. a verdict.
 

 We are then to inquire, whether the obligation of the contract between Satterlee and Matthewson was impaired by this statute1? The objections? urged at the bar, and the arguments in support of them, jipply to that contract, if to either. It is that contract whjch the act declared to be. valid, in opposition to the decision of the supreme court; and admitting the correctness of that decision, it is not easy to perceive how a law which gives validity to a void contract, can be said-to impair the .obligation of that contract. Should a statute declare, contráry to the general principles of law, that contracts founded -upon an illegal or immoral, consideration, whether jin existence at the time of . passing the statute, or which might hereafter-bp entered into, should nevertheless be valid and binding°upon the parties; all would admit the retrospective character of such an enactment, and that the effect of it was.to create a'contiact between parties
 
 *413
 
 .where none had previously existed. But it surety cannot be contended, that to create a contract, arid to destroy orimr pair one, mean the same thing.
 

 If the effect of the statute in question; be not to impair the obligation of either of those contracts, and none othér appear upon this, record, is tnere any other part of the constitution of the United States,-to which it is repugnant It is said to be retrospective. Be it so; but retrospective laws which do not impair the obligation of contracts, or partake of the character of ex post facto laws, are not coridemned or forbidden by any part of that instrument;
 

 All the other objections which have been, made to this statute, admit of the same answer. There is nothing in the constitution o'f the United States, which forbids the legislature of a state to exercise judicial functions. The case of Ogden
 
 vs.
 
 Blackledge came into this Court from the
 
 circuit court
 
 of the United States, and not from the supreme court of North Carolina; and the question, whether the act of 1799, which partook of a judicial character, was repugnant to the. constitution of the United States, did not arise, and conse-. quently was not decided. It may safely be affirmed, that no case has ever been decided'in this Court, upon a writ of error to a state corirt, which. affords the slightest countenance to this objection.
 

 The. objection however which was most pressed upon the court, and relied upon by the counsel for the plaintiff in error, was, that the effect of this, act was to divest rights which were vested by law in Satterlee. There is certainly no part of the constitution of the United States which ap,.plies to á state law of this description; nor áre we aware of any decision of this, or of any circuit court, which has con-~demried such a law upon this ground; provided its effect be not to impair thé obligation of a contract; and it has been shown, that the net in question has no such effect upon either of the contracts which have been before mentioned. .
 

 In the case of Fletcher
 
 vs.
 
 Peck, it was stated by: thé chief justice, that it might well be doubted; whether the nátüre of society and of government do not prescribe some limits to the .legislative power; and he asks, “if any be pre
 
 *414
 
 scribed, where are they to be found, if the property of an individual, fairly and honestly acquired, may be seized without compensation1?” It is no where intimated in that opinion, that a state statute, which divests a vested right, is repugnant to the
 
 constitution of the United
 
 States; and the case in which that, opinion Was pronounced, was removed into this Cpurt by writ of error, not from the'supreme court of a state, but from a circuit court.
 

 The strong expressions of the Court upon this point, in the cases of Vanhorne’s lessee
 
 vs-
 
 Dorance, and The Society ■for the Propagation of the Gospel
 
 vs.
 
 Wheeler, were founded expressly on the constitution of the respective states in which those cases were tried.
 

 We do not mean in any respect to impugn the correctness of the sentiments expressed in those cases, or to question the correctness of a circuit court, sitting to administer the laws of a state, in giving to the constitution of that state a paramount authority over a legislative act passed in violation of it.. We intend to decide no more than that the statute objected to in this case is not repugnant to the
 
 constitution .of the United States,
 
 and that unless it be so,-this Court has no authority, under the 25th section'of the judiciary act, to re-examine and to reverse the judgment of the supreme court of Pennsylvania in the. present case.
 

 That judgment therefore must be affirmed with costs.
 

 Mr Justice. Johnson.
 

 I assent to the decision entered in this cause, but feel it my duty to record my disapprobation of the ground on which it is placed. Could I have brought myself to entertain the same view of the decision of the supreme court of Pennsylvania, with that which my brethren have expressed, I should have felt it a solemn duty to reverse the decision of that court, as violating the constitution of the United States in a most vital part.
 

 What boots it that I am protected by that constitution from having the obligation of my contracts violated,.if the legislative power can
 
 create
 
 a contract for me,.or render binding upon me a contract which was null and void in its creation
 
 %
 
 To give efficacy to a
 
 void
 
 contract, is not, it
 
 *415
 
 is true,
 
 violating
 
 a contract, but it is doing infinitely worse5 it is advancing to the very extreme of that class of arbitrary and dés'potic acts, which bear upon individual rights and liabilities,-and against the whole .of which the constitution most clearly intended to interpose a protection commensurate with the evil.
 

 And it is very clear to my mind, that the cause here did not call for the decision now rendered. There is another, and a safe and obvious ground upon which the decision of the Pennsylvania court may be sustained..
 

 The fallacy of the argument of the plaintiff in error consists in this, that he would give to the decision of a court, on a point arising in the progress of his causé, the binding effect of a statute or a judgment; that he would in fact restrict the same court from revising and overruling a.decision which it has once rendered, and from entering' a different judgment, from that which would have been rendered in the sanie court, had the first decision been adhered to. It is impossible in examining the cause, not to iperceive that the statute complained of w'as no more than declarative of the law on a point on which the decisions of the state courts had fluctuated, and which never was finally settled until the decision took place on which this writ of error is shed out.
 

 The decision on which he relies, to maintain the invalidity of the Connecticut lease, was rendered on a motion for a new trial; all the right it conferred was to have that new trial; and it even appears that before that new trial took place, the same court had decided a causé, which in effect overruled the decision on which he now rests; so that when this act was passed, ne could not even lay claim to that imperfect state of right, which uniform decisions are supposed to confer. The latest decision in fact, which, ought to be the precedent if any, was against his right.
 

 It is perfectly clear, when we examine the reasoning of the judges on rendering the judgmerft now under, review, that they consider the law as unsettled, or rather, as settled against the plaintiff here at the time the act was passed; and if so, what right of his. has been violated
 
 1
 
 The act does no more than what the courts of justice had done, and
 
 *416
 
 would do without the aid of the law; pronounce the decision on which he relies as erroneous in principle, and not binding in precedent.
 

 The decision of the state court is supported under this view of the subject, without resorting to the portentous doctrine (for I must call it portentous), .that á state may declare a void deed to bé. a valid deed, as affecting individual litigants on a point of right, without violating the constitution of the United States, If so, why hot create a deed, of destroy the operation of a limitation act after it has vested a title
 
 1
 

 The .whole of this difficulty arises out of that unhappy idea, that the. phrase M ex post facto,” in the constitution of the Únited States, was confined to criminal cases exclusively; a decision which leaves a large class of arbitrary legislative acts without the prohibitions of the constitution. It was in anticipation of the consequences, that I took occásion in the investigations on the bankrupt question, to make a remark on the meaning of that'phrase in the constitutions , My subsequent investigations have confirmed me in the opinion then delivered, and the present case illustrates its correctness;! will subjoin á n.ote
 
 (a)
 
 to this opinion devoted to the examination of that question.
 

 This .cause came, on to be heard. On the transcript of the record from the supreme court,of the state of Pennsylvania for the.middle, district of Pennsylvania, and was arguéd by counsel; pn consideration wherepf, it is considered; ordered, and adjudged by this Court, that the judgment of -the said supreme court for the state, of Pennsylvania in this cause be, and the same is hereby affirmed with costs.
 

 (a)
 

 For this note see the end of the volume.