RYDER vs INNERARITY.

1. A certificate of confirmation issued by the register and receiver of a land office, acting as commissioners, under the act of congress of the 8th May 1822, is competent as evidence in the courts of this State, in trespass to try title, between one claiming under such certificate, and another, claiming by possession.

2. And this, notwithstanding such certificate is unaccompanied by any separate and distinct warrant of survey or location.

3. A transcript of the title upon which such certificate is founded, taken from the land office, properly authenticated, and proved to be a true copy, by a competent witness, can not be rejected, as evidence, on the ground that it appears to be a sworn copy of a translation of the original.

4. A decree in chancery, authorising a sale of all the real estate of a party, is good, as evidence, against all the world, so far as the transfer of the right of such party to another, or to a purchaser under such decree, is concerned.

This was an action of trespass, to try the title to a certain lot of land, situated in the town of Mobile; and was prosecuted in the Circuit Court of that County, by Innerarity, against Ryder. On the trial below, a verdict was rendered in favor of the plaintiff; and, by a bill of exceptions, the case was removed into this Court.

The evidence introduced to support the claim of Innerarity, was, first—a certificate of the Register and Receiver of the land Office, at Jackson Court house, in the State of Mississippi, specifying that the claim No. 22, in the report of the Register and Receiver, No. 7, had been confirmed; and that the heirs of Issabella Campbell were entitled, thereby, to a certain lot of land, lying back of the town of Mobile; which lot contained three arpents of land.

Second—a transcript from the land office of the proper district, of a Spanish title, whereon said certificate was founded: and by which it appeared, that the particular lot of land, in question, had been granted by the Spanish commandant, Cayetano Perez, in 1810, to the said Issabella Campbell.

Innerarity then deraigned his title to said lot from the said Issabella Campbell, to John Forbes & Co., and from said said Forbes & Co. to himself. The conveyance from Forbes & Co. to the plaintiff was founded upon a decree in Chancery, rendered by the Circuit Court of Mobile, on a bill, filed by Innerarity, surviving partner of said firm, praying a sale of the lands of the company, for the purpose of closing its concerns; and which had been effected, in due course of law. Under this decree, the lot of land in question had been sold, and Innerarity was the purchaser.

The defendant below gave no paper title in evidence, but relied on possession alone; and he objected to the reading in evidence of the certificate above mentioned, on the part of the plaintiff: first—because said certificate was not evidence of title, by the laws of the land, against a defendant in possession; and, secondly, because the said certificate was unaccompanied by any warrant of survey or location: but these objections were overruled, and the certificate was permitted to be read to the jury.

The defendant further objected to the reading of the Chancery record as evidence, because the said defendant was not a party to the said decree, or the suit upon which it was founded: and also because, at the time of the pendency of the said Chancery suit; and, also, at the time of the entry of said de-

cree thereon, the said defendant held the premises in question, adversely to the plaintiff; and because the said premises were not mentioned or described in said decree : but this objection was also, overruled, and the record aforesaid was read, as evidence, to the jury.

The case was argued, on the part of the plaintiff in error, by *Mr. Elliott;* and on that of the defendant, by *Mr. Acre.*

On the part of the plaintiff, it was contended, that the certificate in question, of the register and receiver, unaccompanied by a warrant of survey or order of location ought not to have been permitted to go to the jury as evidence of the plaintiff's right to the premises in question—first, because said certificate merely stated, that the legal representatives of Issabella Campbell were entitled to a patent for a lot, containing three arpents, situate back of the town of Mobile, and claimed by virtue of a Spanish order of survey, dated 10th August, 1810, to be located according to the laws, usages and customs of the Spanish government.

It is conceded, by the bill of exceptions, that no warrant of survey, or order of location, accompanied the certificate. Without such warrant or order of survey, or other legal proof of the identity or locality of the land, it would be void in law, for uncertainty ; and would not be issued in pursuance to the requisitions of law, and could have no application to the lot in controversy. The various acts of Congress, in relation to the settlement and adjustment of land claims, below the 31° of N. Lat. have,

from frequent reference, become familiar to the Court. Their construction has been settled by this Court, in the case of *Hallet* vs. *Eslava*, 3 Stewart & Porter, 105, and *Gougett* vs. *Lewis*, Ib. 184.

The Court will, doubtless, recollect, that as directory to the principal deputy surveyor, where the precise location is attempted to be fixed, the registers and receivers are required to issue to him, warrants of location, as was done in the cases above referred to. This was not done, here—and he, doubtless, made the survey, not according to the directions of the register and receiver, but according to the instructions of the party in interest, Mr. Innerarity. It is believed that Innerarity can take nothing, thereby—nor can his claim derive any additional validity therefrom.

If, as auxiliary to the certificate, we refer to the transcript of the Spanish title, for the purpose of determining the locality of the grant, or its validity, an insuperable objection stares us in the face. The translation of the grant in question, and the transcript from this translation are not the highest legal evidence of which the case is susceptible. It was not pretended, on the trial, that the original was lost, nor was its absence accounted for. It should have been produced.—The signatures to the grant, should have been established by competent testimony— because it might have been a forgery—it may have been incorrectly translated. That a certificate has been founded and issued upon it, does not alter the case; because the proceeding was wholly *ex parte*, and that certificate is defective for want of identifying the lands in question, unless resort be had to the

4 s. & p. 3

grant. But, it is believed, that the Court has already passed upon this point, in the case of *Hallett* vs. *Eslava.*

We next contend, that the decree in Chancery referred to, in the bill of exceptions, under which Innerarity assumes, that the title of John Forbes & Co. was vested in him, and which was read, to establish this fact, ought to have been excluded from the jury, in the Court below; because Ryder was not a party or privy thereto, and claimed no right or title under them; and because, at the rendition of said decree, he held adversely to them; and because the action is in Innerarity's own name, and in his own right: and the said decree, if it were admissible evidence, and valid against Ryder, decrees, "that all the real estate, situate in the State of Alabama, standing in the name and style of John Forbes & Co., by whatever title, or in whatever name the same may be held, be divested out of the heirs and devisees of John Forbes, and vested in the said complainant, James Innerarity, *as acting, surviving partner*, of the said late firm of John Forbes & Co., for the benefit of the devisees of the said late firm, and of the heirs and devisees of the said John Forbes & Co., and of the creditors of the said late late firm of John Forbes & Co."

It is laid down, as a general rule, that a verdict, or judgment is evidence only between the same parties or privies, or such as claim under them.—3 John. 8; 18 Ib. 352.

No one can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary.— 1 Munford, 394.

SAFFOLD, J.—The action was trespass to try the title to a lot in the town of Mobile, and to recover damages, for the detention pursuant to the statute, brought in the Circuit Court of Mobile. Innerarity, as plaintiff below, effected a recovery, from which Ryder, in his life-time, sued out this writ of error, and which, after the suggestion of his death, has been prosecuted by his heirs. The questions for revision, appear from exceptions taken on the trial, and relate exclusively to the admission, by the Court, of evidence, offered by the plaintiff below, which was objected to, by the then defendant.

The first document thus admitted as evidence, was a certificate of the register and receiver of the land office, at Jackson Court House, Mississippi, acting, *ex officio*, as commissioners—certifying, that the claim, No. 22, in the report of the commissioners, No. 7, was confirmed. This certificate bears date the 4th November, 1822, and is in the usual form for lots which had not been surveyed. It purports to have been issued pursuant to the act of Congress, of the 8th May, 1822, entitled, " an act, confirming claims to lots, in the town of Mobile."— It recognises the representatives of Issabella Campbell (she being original claimant,) as the then claimants and declares a confirmation of their claim as a *donation;* and that they were "entitled to a patent for a lot containing three arpents, situate back of the town of Mobile, and claimed by virtue of a Spanish order of survey, dated 10th August, 1810; to be located and surveyed, agreeably to the laws, usages, and customs of the Spanish government, and the laws of the United States, in such cases made and provided."— Then follow a plat and certificate of the survey, in

due form, by the principal deputy surveyor, in conformity to the certificnte of confirmation. It ascertains the metes and bounds, and contents of the lot, and is dated in 1823.

In connection with which, Innerarity also gave in evidence a transcript from the land office of the proper district, of the said Spanish title, whereon said certificate was founded : which transcript was proved by a witness produced, to have been correctly copied from the records of the land office, in which said Spanish titles had been filed, under the act of congress, in such case made and provided. This Spanish title consists of a petition, by said Issabella Campbell, to the Spanish commandant of the date of August 1, 1810, as aforesaid : stating that she was then an inhabitant of Mobile, and was anxious to obtain a tract of land, which was vacant, on which to employ her slaves, in making a garden—" on the back part of the town, bounded, on the south side, by John Forbes & Co.'s land ; on the east, by Joackim street, and on the other sides, by vacant land :" and soliciting the commandant, to grant her a title for three or four arpents of land, in the place designated.

To which is annexed an order of the commandant, granting the three arpents of land in the place mentioned, and a direction to the deputy surveyor, to measure the same for her use, under the exact condition, that they should be established within the peremptory term of one year, from that date ; and then she should apply to the general intendency, for her title, in form. Signed " Cayetano Perez.

To this is subjoined the certificate of the register of the land office, dated 18th November, 1823, cer-

tifying the same to be a true extract from the original record of the ciaim, as aforesaid, from the book of written evidence of claims, then in his office ; and that a certificate of confirmation, by the commissioners, for the same had been granted, as above described.

The other portion of the evidence objected to, but admitted by the Court, is stated thus, that " the plaintiff then, deraigned his title to the land mentioned in said Spanish title, and said certificate from the original Spanish grantee or donee, to John Forbes & Co. by a conveyance from said donee or grantee to said John Forbes & Co., and from said John Forbes & Co. to himself, by producing and reading in evidence, a decree in Chancery,"—which was exhibited.

It is unnecessary to examine the legality of of the Chancery proceedings, or decree.   The only objection made to it, as evidence, was, that the defendant was not a party to the suit or decree ; that he, at the time, held the premises as an adverse claimant ; and that the particular premises were not named or described in the decree.   It may be noticed, however, that the decree, pursuant to the object of the bill, embraces equally, by a general provision, all the real estate which belonged to the late firm of John Forbes & Co., within the State.   Also, that no  objection is made to the title, as deraigned from the Spanish grantee or donee, to John Forbes & Co. It is stated to have been by a conveyance from the one to the othor, and is presumed to have been legally executed, and duly proven.

The grounds of exception to the certificate, as evidence, are stated to have been—that it was not, by law, evidence of title against a defendant in posses-

sion ; and was unaccompanied by any warrant of survey or location.

The admission of the evidence referred to, is the only cause assigned for error.

1. The first exception, relates to the certificate of confirmation. If, for the reason, that the lot in question had not been surveyed under the authority of the United States, previous to the issuance of this certificate, or the want of any other corroborating testimony, the plaintiff below did not produce evidence sufficient to entitle him to recover, that circumstance could not determine the admissibility of the certificate as evidence. It would only have furnished a ground of objection to the recovery, and authority for requesting instructions from the Court to the jury, to that effect. But as that question is not presented by the record, or any other, relating to the effect of the certificate as evidence, it is most proper to decline the expression of any opinion, whether such objection could have been sustained or not ; yet I would not drop the slightest intimitation that it could. The only question on this point, is, whether the certificate was admissible as evidence ? This must depend on the nature of the title intended to be sustained by it, and the various acts of legislation by the general and state governments, in relation to titles of this description ; these acts on the part of the general government, are numerous and complicated. In as much, however, as my opinion has been fully declared upon them in two previous decisions during the present term, it is considered unnecessary to repeat the review of them now, except as relates to a few of the principles, particularly involved in this case, and not fully embraced by

RYDER *vs*. INNERARITY.

the former.   The cases referred to, are *Hallett* vs. *Eslava*,[a] and *Lewis* vs. *Goguette*.[b]

The question respecting the competency of the certificate of confirmation as evidence, has been argued with reference to the provision contained in the statute of this State, entitled "an act making further regulations in judicial proceedings.[c]  It is, " that all certificates issued in pursuance of any act of Congress, by any of the boards of commissioners, register of a land office, or any other person duly authorised to issue such certificate, upon any warrant or order of survey, or to any donation or pre-emption claimants, for any lands in this territory, shall be taken and received as vesting a full, complete, and legal title in the person in whose favor the said certificate is granted, to the lands therein mentioned, and his, her or their assigns, so far as to enable the holder of such certificate to maintain any action thereon, and the same shall be received in evidence, as such, in any Court of this territory."   Our Constitution, subsequently adopted, recognised the force and validity of all the territorial acts, not repugnant thereto, until they shall expire, or be repealed, as the laws of the State.

In the case of *Lewis* vs. *Goguette*, I maintained that a just interpretation of this statute, must equally apply it to all certificates that *had been or might be legally* granted, pursuant to acts of Congress then existing, or which might afterwards be passed, authorising certificates of the grade and dignity contemplated—that is, " to all certificates upon any warrant, or order of survey, or to any donation or pre-emption claimants."  I also attempted to show, that the various acts of Congress, relating to land claims of the

*a* 3 Stew. & Porter, 105
*b* ib. 184.
*c* Aik. Dig. 233.

description of these, from the acts of 1803 and 1804, to that under which this certificate issued, are to be construed as statutes in *pari materia ;* that they all have a necessary dependence on each other ; and that certificates of the same kind, under either, are of the same dignity, and have the same legal effect. My opinion remains the same. This certificate was issued by the commissioners of the land office, pursuant to the act of the 8th May, 1822, "confirming claims to lots in the town of Mobile," &c.

In the case of *Hallett* vs. *Eslava*, it was shewn, from an examination of the several previous acts of congress, respecting land claims, in the district east of Pearl river, and the act, under which this certificate issued, that the first and second sections of the latter recognised all proceedings, legally had under the former acts ; and declared valid, all claims to town lots, founded on complete grants, or, on any orders of survey, requettes, permissions to settle, or other evidences of claim, existing prior to the 20th December, 1803 ; and which claims of *either* kind, were derived from the French, British, or Spanish authorities : also, all claims to lots, founded on private conveyances, which were passed through the office of the commandant, or other evidence, supposed to be founded on grants lost by time and accident ; *provided,* in each case, that the claims had been reported by the commissioners, as required by the acts, and were valid, in the opinion of the commissioners, making the reports thereon.

The fourth section of the same acts contains a further provision, which appears fully to embrace claims of the description of this. It is, "that for all other claims to lots in the town aforesaid, reported

as aforesaid, which are contained in the report of the register and receiver, and which, by the said report, appear to have been built upon, or improved and occupied, on or before the 15th day of April, 1813, the claimants shall be entitled to grants therefor, as donations : "Provided, that in all such claims where the quantity claimed is not ascertained, no one claim shall be confirmed for a quantity exceeding seven thousand two hundred square feet; and provided, also, that all the confirmations and grants provided to be made by this act, shall amount only to a relinquishment, forever, on the part of the United States, of all right and title whatever, to the lots of land so confirmed or granted."

The 5th section provides, that the Commissioners "shall have the same power to direct the manner in which all lands confirmed by this act shall be located and surveyed, and also to decide between the parties in all conflicting and interfering claims, as are given by the act entitled, 'an act supplementary to the several acts for adjusting claims to land and establishing land offices in the district east of the island of New Orleans.'"

It appears to have been the policy of the government to recognize the validity of all inchoate, as well as more perfect titles, in Mobile and the adjacent country, existing prior to the 20th December, 1803—about the time of the cession of the country by France, to the United States: also to respect and confirm, *as donations*, all claims arising from improvement and occupancy prior to the 15th April, 1813, near the time the United States took possession of the country.

4 s. & p.             4

**L. L. 758.**      The act last referred to, is that of 1819 :[a] the 11th section of which provides, that the surveyor for the lands south of the State of Tennessee, shall, with the consent and approbation of the President of the United States, appoint a principal deputy surveyor, for the lands within the district east and west of Pearl river; "and whose duty it shall be to survey, or cause to be surveyed, by his other deputies, the lands, the claims to which are confirmed, and that are directed to be granted as donations, where the same have not been already surveyed, and the lands which may be claimed by right of pre-emption, whenever directed by the register and receiver; and to execute such other surveys as may be necessary for the ascertainment of the lands, the title or claim to which is embraced in the Report of the Commissioners aforesaid."

It was also provided by the same act, that the register and receiver should have power to examine the claims recognized, confirmed or provided to be granted, by the provisions thereof; also claims to the right of pre-emption; and that they should make out to each claimant entitled in their opinion thereto, a certificate, according to the nature of the case, under such instructions as they might receive from the Commissioner of the general land office; and on the presentation at the general land office of such certificate for a confirmed claim, or for a donation, according to the provisions of the act; and where it should appear to the satisfaction of the Commissioner of the general land office that the certificate had been fairly obtained, then and in that case, a patent should be granted in like manner as for other lands of the United States,

This brief examination will suffice to show that the act of 8th May, 1822, under which this certificate issued, placed all land claims of the different kinds mentioned, on the same ground of validity; declared that in all cases of claims of the description of this, in favor of Isabel Campbell, which were contained in the report of the register and receiver, and favorably reported on, "the claimants should be entitled to grants therefor, as donations;" and which grants should amount to relinquishments forever on the part of the United States.

How far the certificates were conclusive of the rights attempted to be sustained by them, is a distinct question, not presented by this record, but one on which an opinion was intimated in the previous cases refered to.

As respects the objection that this certificate was unaccompanied with any warrant of survey or location, it is considered a sufficient answer, that the act of 1819 referred to, contains a sufficient warrant. It made it the duty of the surveyor to survey the lands, the claims to which were confirmed and directed to be granted as donations, where the same had not been already surveyed, whenever directed by the register and receiver; and to execute such other surveys as might be necessary for the ascertainment of the lands, the title or claim to which, was embraced in the report of the commissioners. Nothing appearing to the contrary, the presumption is, that this claim was contained in the report of the commissioners, and that the report was favorable in relation to it—indeed the certificate refers to it, as contained in the commissioners' report, No. 7. It may be added, that the certificate itself contains in

substance a warrant, by expressing that the claim is "to be located and surveyed agreeably to the laws, usages and customs of the Spanish government, and the laws of the United States in such cases made and provided."

It is further objected by the plaintiff in error, that the certificate is uncertain as to the identity or location of the lot; that it only expresses the contents to be "three arpents, situate back of the town of Mobile," and claimed by virtue of a Spanish order of survey, dated 10th August, 1810." The Spanish order of survey (in connexion with the claimant's selection, as already shown) describes the lot to be "on the back part of the town, bounded on the south side by John Forbes & Co's land, on the east by St. Joakim street, and on all other sides by vacant land." The plat, with its accompanying certificate of survey, by the principal deputy surveyor of the United States, purports to define the location in all respects, with precision. But it is contended, he had no sufficient *data* for his government, and may have regulated the location by the direction of the claimant. Whether the circumstance of his having been an agent of the government, acting under official obligation, would preclude any objection of that kind: or whether there may not have been evidence, *aliunde*, to satisfy it, are not (as before remarked,) questions presented for our consideration. The only question on this point raised by the record is, whether under the circumstances the certificate was evidence for what it could prove. It is also objected that the transcript of this claim as taken from the records of the land office, were inadmissible as evidence; because it is only a sworn copy of a trans-

lation of the originals, and consequently two removes
from the best evidence, when the originals are pre-
sumed to remain within reach of the party; and
that there was no proof of the signature of the
Spanish commandant. This objection is supposed
to derive strength from the opinion referred to in the
case of *Hallett vs. Eslava,* and from a late decision
of the Supreme Court of the United States.

The expressions relied on in the case of Hallett
against Eslava, had reference alone to such docu-
ments as had not passed through the land office, and
undergone the scrutiny of investigation required by
law from the commissioners—such as had not receiv
ed any sanction from this government—such as were
not offered in aid of the certificates; but such as
were offered in opposition to them. When offered
with that view, it was said, a " French patent ought
to be produced, that it might appear whether it had
been authenticated by any authoritative official seal
which proved itself, or could be proved; or its ab-
sence should have been accounted for and supplied
according to the rules of evidence"

The decision of the Supreme Court of the United
States, to which allusion has been made, was in the
case of *The United States* vs. *Aredondo, et al.*[a]  The
circumstances of that case were so far different from [a]6 Peters, 691.
these, that the main question decided in that, can
have no direct influence on this case.  But some of the
principles declared by that Court, are supposed to
affect the character of the evidence of this certificate;
and of the Spanish order of survey, as transcribed
from the books of the land office.  The counsel on
each side, claim advantage from different principles,
expressed in the same opinion.  It was delivered by

Mr. Justice *Baldwin*.  In speaking of the estab-
lishment of land claims, he said, " it was a legal pre-
sumption that public and responsible officers claim-
ing and exercising the right of disposing of the pub-
lic domain, did it by order and consent of the gov-
ernment·in whose name the acts were done; that
otherwise the confusion and uncertainty of titles and
papers would be infinite, even in this country; "es-
pecially in the States whose tenures to land depend
on every description of inceptive, vague and inchoate
equities, arising in the grade of evidence, by
the various intermediate acts, to a full and legal
consummation, by patent under the great seal."—
That the signature of the officers and the genuine-
ness of the papers must be proved by witnesses, or
authenticated by an official seal.  That to require
any farther proof, would be an entire novelty in our
jurisprudence, as a rule of equity, or principle of law
or justice.

He also declared it to be an "universal principle,
that where power or jurisdiction is delegated to any
public officer or tribunal, over a subject matter, and
its exercise is confided to his or their discretion—
the acts so done, are binding and valid, as to the
subject matter; and individual rights will not be
disturbed, collaterally, for any thing done, in the ex-
ercise of that discretion, within the authority and
power conferred.  The only questions which can
arise between an individual claiming a right under
the acts done, and the public, or any person, deny-
ing its validity, are power in the officer, and fraud
in the party.  All other questions are settled by the
decision made, or the act done, by the tribunal or
officer—whether executive,[a] legislative,[b] judicial,[c] or

[a] 1 Cr 170–1
[b] 4 Wheat,
423; 2 Pet.
412; 4 Pet.
563
[c] 11 Mass.R
227; 11S &
R42¹,adop
ted in 2 Pet
¹67–8.

special ;[a] unless an appeal is provided for, or other revision, by some appellate or supervisory tribunal, is prescribed by law. [a]20 John. R 739-40 ; 2 Daw. P. C. 521

It may be seen, that these remarks are used with reference to claims, or evidences of titles emanating from other governments, than those under whose laws the attempt is made to establish them ; and that after such have received the sanction of any tribunal or officer, under this government, legally authorised to investigate, determine and report on their validity—a decision so made, is evidence of the authority and genuineness of the grant.

The same opinion remarks, in reference to many of the land laws—particularly those by which we are governed, that "these laws being in *pari materia*," and referred to in the one giving jurisdiction to that Court, they must be taken as one law. That the manifest object of the law, in directing those claims to be filed, which were valid by the laws of nations, was, that they should be adjudicated on accordingly, by the authorised tribunal. That, "to impute to congress the intention of directing them to be filed, described and recorded—and forever barred, if not so recorded, and of ordering the tribunal, to examine and decide on their validity; and, in the same sentence, withhold from the same tribunal, the power of doing it, by the principles of the same law, on which they were founded, and by which they were made valid, would be utterly inconsistent with every rule of law."[b]    See also, *Lacroix* [b]Page 720—21 vs. *Chamberlain* [c]    [c]12 Wheat. 599

These principles, it is conceived, may be applied to the certificate before us, and to the Spanish claim on which it was granted, by the commissioners—

they may assist in determining the question of the admissibility of the former, as evidence. When the aid of our statute of 1812, before referred to, is also invoked, I see no principle, on which the certificate of confirmation could have been rejected, when offered in evidence. If there was a necessity for going behind it, and showing any of the evidence on which it was granted, perhaps it could only have been that avowed, as the object, by the counsel for the defendant in error—the better to identify the lot, and define its location.

2. The other exception to the evidence, received on the trial is, that relating to the admissibility of the decree, shewing a conveyance of the title to the lot, from the firm of John Forbes & Co. A very brief notice is sufficient to dispose of this question.

It is objected only that the plaintiff in error, was not a party to the suit or decree; and that they do not name or describe the particular premises.

There is conceived to be no doubt of the power of Chancery, (nor is it questioned,) in a proper case, to decree a conveyance of real or personal estate. — It is no less clear, that such conveyance may be evidence against all the world, equally as though it had been voluntarily made between competent parties, on sufficient consideration, and with all legal solemnity. The fact that there may have been an adverse claimant to the property, can make no difference: such conveyance affects not his claim or title: it only transfers the right, whatever it may be, of one of the parties in the suit, to another, or to a purchaser under the decree; and renders it neither more nor less valid, against an adverse claimant, and stranger to the decree, than if no such transfer had taken

* Aik. Dig. 287

place, and the right were prosecuted by the former proprietor. The adverse claimant has only the same title to resist in either event, and has no right to object, that the holder of the opposing title, has been changed, by this, more than any other legal mode of conveyance. The objection that the lot was not particularly named or described, in the decree, is equally unavailable. The object of the suit and decree, was to effect a sale and conveyance of all the real estate, belonging to the firm of John Forbes & Co., situate within this State, as a means of closing the business of the firm. Such are the directions and provisions of the dec.ee—consequently, there can be no uncertainty whether or not this lot was embraced.

The opinion of the Court is, that there is no error, on either point of exception. Let the judgment be affirmed.

TAYLOR, J., not sitting.