JOHN F. WILSON
vs.                    SEPTEMBER TERM, 1847.
MATTHEW   HARDESTY.

[USURY—CONSTITUTIONALITY OF THE ACT OF 1845, CH. 352.]

WHERE a party goes into a court of equity to ask relief against an usurious mort-
gage or contract, he must do equity, by paying, or offering to pay, the prin-
cipal sum, with legal interest.

When the legislature transcends its authority, the courts of justice in the dis-
charge of their duties, are bound to pronounce its acts void : but this high
power of the judiciary should be exercised with great caution, and only when
the act of the legislature is manifestly beyond the pale of its authority.

Retrospective laws and laws divesting vested rights, unless *ex post facto*, or im-
pairing the obligation of contracts, do not fall within the provision of the
constitution of the United States, however repugnant they may be to the prin-
ciples of sound legislation.

The act of 1845, ch. 352, as affecting pre-existing contracts, tainted with usury,
is neither prohibited by the constitution or bill of rights of this State ; nor
does it come within the provision contained in the constitution of the United
States, prohibiting the States from passing *ex post facto* laws, and laws im-
pairing the obligation of contracts.

[The object of the bill in this case was the sale of certain
premises which had been mortgaged to the complainant by the
defendant, to secure to the former the payment of $500 00, with
interest from the 15th October, 1840.   The defendant pleaded
usury, stating that the sum actually advanced to him on the day
of the execution of the mortgage was only $470 00, and prayed
"judgment, if he, the defendant, ought to be charged with the
debt," &c.   The complainant confessed the facts of the plea,
and consented to a decree for the sum actually due.   The Chan-
cellor deemed this a waiver of objection to the sufficiency of the
plea, under the act of 1845, chapter 352, which limits the de-
fence to the excessive usury, and makes it the duty of the court,
after ascertaining the amount fairly due for principal and inter-
est, to decree accordingly.   Having stated the case, he deliv-
ered his opinion as follows:]

THE CHANCELLOR:

The question, and the only question in this case, relates to the validity of the act of 1845, as a constitutional exercise of legislative power, so far as concerns pre-existing contracts and engagements tainted with usury.

The defendant insists, that inasmuch as the act of 1704 declares that all bonds, contracts and assurances whatsoever, made after the time therein limited, whereupon, or whereby, more than the rate of interest fixed by that act is reserved, shall be utterly void, it follows that the legislative authority is insufficient to give such contracts validity to any extent whatever.

The argument is, that the present mortgage is an absolute nullity, and any attempt on the part of the legislature to give it efficacy to any extent, or to abridge the right of the defendant to defend himself against it, is equivalent to the legislative creation of a contract, out of elements having no legal existence.

But, notwithstanding the language of the act of 1704 is so strong, it is very certain, that contracts within its provisions are not, under all circumstances, treated as merely void—for it is settled, that if a party goes into a court of equity, asking relief against an usurious mortgage or contract, he must do equity by paying, or offering to pay, the principal sum and legal interest. *Trumbo* vs. *Blizzard*, 5 *Gill & Johnson*, 18. Nay, he is not even entitled to a discovery as to the usury, unless he offers to pay the principal debt, and legal interest. *Jordan* vs. *Trumbo*, 6 *G. & J.*, 103. Courts of equity, therefore, have undertaken, upon a principle which seems to have met the approbation of the community, for it is one long since established, to give a reasonable sanction to contracts affected by usury, by refusing to relieve a party against them, unless he would himself do that, which the moral obligation arising from the receipt and appropriation to his own use of the money of another required him to do.

There can be no doubt, that if the legislative department of the government transcends its authority, the courts of justice are bound, in discharge of the functions properly appertaining to them, to pronounce its acts void. *Crane* vs. *Meginnis*, 1 *Gill & Johns.*, 463.

But it is equally clear that this high exercise of power on the part of the judiciary should be exercised with great caution, and only when the act of the legislature is manifestly beyond the pale of its authority, for that department is the great depositary of the power of the government.

The Chancellor is unable to perceive upon what principle this law is to be condemned. There is certainly no provision in the constitution and bill of rights of this state, which prohibits the passage of such a law, and it is impossible, it is thought, to bring it under the restraining authority of the constitution of the United States, which does not prohibit the states from passing retrospective laws generally, but only *ex post facto* laws, and laws impairing the obligation of contracts. *Charles River Bridge* vs. *Warren Bridge et al.*, 14 *Peters*, 339.

It is clearly settled by the high authority of the Supreme Court of the United States, that retrospective laws, and laws divesting vested rights, unless *ex post facto*, or impairing the obligation of contracts, do not fall within the provision in the constitution of the United States, however repugnant they may be to the principle of sound legislation. *Calder* vs. *Bull*, 3 *Dallas*, 386 ; *Slatterlee* vs. *Matthewson*, 2 *Peters*, 413 ; *Watson* vs. *Mercer*, 8 *Peters*, 88.

The law under consideration, is certainly not an *ex post facto* law, as laws of that character relate only to criminal proceedings ; nor is it a law impairing the obligation of contracts, for so far from impairing the obligation of the contract, it gives it a force and efficacy which it did not possess before. That laws of this description are not prohibited by the constitution of the United States, was most clearly decided in the case of *Watson et al.* vs. *Mercer*, 8 *Peters*, 89, which affirmed the validity of a law of Pennsylvania, curing the defective acknowledgment of a deed made by a feme covert, passed after a recovery by the heirs of the wife, upon the ground of the defect, healed by the subsequent act.

But it is not only in courts of equity that the force of this moral obligation, which has the effect when it can be applied, of moderating the rigor of the laws against usury, has been felt,

for even in the courts of law, it has been decided that an action of trover cannot be maintained for goods mortgaged to secure an usurious debt, unless the plaintiff has tendered the amount actually loaned. *Lucas* vs. *Latour,* 6 *Har. & Johns.,* 100.

There can be no doubt, then, that if the present defendant was seeking, either in a court of law or equity for relief against this mortgage, he could only succeed by paying or offering to pay the amount he actually received from his creditor, together with the legal interest thereon, and consequently the whole effect of the act of assembly is to apply the same equitable principle to the relation which the parties bear to each other in this case. If the mortgagor was the plaintiff, and the mortgagee defendant, either at law or in equity, relief would only be granted upon the equitable principle, of paying the sum borrowed with legal interest. Now, has not the legislature the constitutional power to say that the same rule of honesty shall be observed, when the position of the parties is reversed, for to that extent, and no further does the act go. In this view of the case, it would seem to be no more than the mere exercise of the law making power, over the subject of remedies, their right to regulate, which cannot be disputed.

Upon the whole, my opinion is, that the act is not unconstitutional, and, therefore, I shall pass a decree for the payment of the sum admitted to be actually and fairly due ; or for a sale of the mortgaged property, in case such payment is not made in a reasonable time.

---

[No appeal was taken from this decree, but in a subsequent case, the Court of Appeals affirmed the constitutionality of the act of 1845, ch. 352, with reference to pre-existing usurious contracts.]