## HOLLIS, Adm'r., *vs.* CAUGHMAN AND WIFE.

1. A decree of the Court of Probate is not final, unless it makes distribution of all the assets found to be in the hands of the executor or administrator, among all the parties who appear by the record to be interested in the estate, and unless all the parties in interest are before the court, either in person or by notice.

2. But when the decree purports to be final, and execution is awarded upon it, it may be revised on writ of error, although not in fact final.

3. An administrator is properly chargeable with interest on money in his hands, unless he makes affidavit that he has not used it, or, if he makes such affidavit, it is successfully controverted.

ERROR to the Court of Probate of Marion.

The plaintiff in error was appointed by the Orphans' Court of Marion county administrator of Daniel Holliday, in March, 1837.

On the 13th of March, 1839, he made with the Orphans' Court, agreeably to notice which had been ordered by the court, a settlement which is called in the record "a final settlement," by which it is said, he "he stands justly indebted to the legal heirs of said Holliday, deceased, in the sum of $17,800$\frac{23}{100}$." The entry then proceeds: "The estate is large, and, from prospects of new litigation, may put Hollis unavoidably to much more personal trouble as administrator as aforesaid. For his attention and trouble already had and performed, this court adjudges and decrees unto the said Hollis, out of the moneys of said estate, $500, and decrees also that said Hollis retain in his hands, to meet further trouble, expenses and cost which may arise on said estate, the further sum of $1,000. The said estate to its final close is to pay all the rightful personal expenses of said Hollis, whilst attending to the business thereof; also, the said estate shall pay, out of this last $1,000, all rightful and proper cost and charges which may be necessary in the said Hollis' final close of the same."

After this entry, follows another in these words, made at the same time: "As stated in the preceding order, that said John Hollis, administrator as aforesaid, stands indebted unto the legal heirs of Daniel Holliday, deceased, in the sum of $17,800$\frac{23}{100}$, it is ordered and decreed that said Hollis pay unto the heirs of the said Daniel the said sum of $17,800$\frac{23}{100}$; that is to say, it is decreed that said John Hollis, administrator, &c., pay to Daniel Holliday, son of said Daniel, deceased, his heirs or assigns, the sum of $1650."

There is an entry as of February, 1841, by which it appears that Peter Holliday, one of the sons of the intestate, moved the court to order a citation to Hollis, the administrator, to make distribution of the $1000 that had been left in his hands.

Nothing further appears to have been done until May, 1851, when the following entry was made:

"Court of Probate, regular term held on 2d Monday of

May, 1851, being the 12th day of said month. Present, Jno. D. Terrell, judge, &c. Whereas, H. J. Caughman, in right of his wife, who was Mary M. Denley, by attorney, previous to this day, has moved the court for a final settlement on the estate of Daniel Holliday, deceased; and John Hollis, administrator of the estate of said Daniel Holliday, deceased, appearing, and his account and vouchers being on file; and it appearing to the satisfaction of the court that there yet remained in the hands of the said John Hollis, administrator as aforesaid, due to the said Caughman, in right as aforesaid, the sum of $1357$\frac{51}{100}$ : It is therefore ordered and decreed by the court, that the said H. J. Caughman, in right of his wife, Mary M., have and recover of and from the said John Hollis, administrator as aforesaid, the sum of $1357$\frac{51}{100}$, and for which execution may issue," &c.

The account current of the administrator, verified by affidavit, on the 12th of May, 1851, is in the record. He debits himself with the amount of assets found to be in his hands on the settlement made the 13th of March, 1839, and credits himself with the payment of the distributive shares of eleven persons, himself included, children or sons-in-law of Daniel Holliday, deceased. The share of each is set down at $1650, *plus* $60, the latter sum arising from what remained to be distributed of the $1000 left in his hands. In respect to the shares of the others, it does not appear from the face of the account when they were paid. The item of the account relating to the wife of the defendant in error reads thus: "By this amount paid to Mary M. Denley, who claimed through her mother, Harriet Denley, who was a daughter of said Daniel Holliday, and who had departed this life before the death of said Daniel, leaving her daughter, Mary M. Denley, $700 on the 20th day of June, 1845, and $950 on the 7th of October, 1845, making the total amount of $1650."

No portion of the $1000 left in the hands of the administrator is allowed to her in the account, but $60 apiece was allowed to the other ten distributees, the administrator, in the right of his wife, included.

The foregoing is an abstract of the material parts of the record.

The plaintiff in error assigns for error:

1. The decree of the second Monday in May, 1851, is un-supported by any evidence or paper in the record;

2. The said decree is too large, as appears by the record;

3. The decree was rendered without any notice to the plaintiff in error;

4. The decree should not have been for more than sixty dollars;

5. The said decree is erroneous, as appears by the account of the administrator, to which no exception was taken;

6. The said decree is for interest, when no interest should have been charged or allowed;

7. The decree should have been in favor of defendant and his wife.

E. W. PECK and W. S. EARNEST, for plaintiff in error.

WM. COOPER, contra.

PHELAN, J.—The nature of the jurisdiction conferred by statute on the Probate Court, touching the settlement and distribution of estates, is two-fold. One branch of this juris-diction is to make partial settlements and distribution; the other is to make final settlements and distribution. In re-spect to each, the mode of proceeding prescribed by the sta-tute must be substantially pursued; otherwise, the judgments will be not voidable merely, but void. This is a familiar doc-trine, for which it is not necessary to cite authorities.

Partial settlements and distributions may be made with one or more of the parties in interest; and after the lapse of eigh-teen months from the grant of letters, any distributee or leg-atee may compel an executor or administrator to deliver over a specific legacy, or come to a settlement and make distribu-tion. Clay's Dig. 196, §§ 23, 24; Graham v. Abercrombie, 8 Ala. 552.

When cited by any legatee or distributee, proceeding for himself alone, to make settlement and distribution, it devolves on the executor or administrator, if he wishes to conclude any other of the parties in interest by the settlement and distribu-tion he proposes to go into, to make them parties by notice or citation to that effect. It is accordingly his right to have all the parties in interest cited, and made parties to the settle-

ment and distribution, if he desires it, and it is error in the Probate Court to refuse him this right when demanded. Harrison v. Harrison, 9 Ala. 470; Sankey v. Ellsberry, 10 Ala. 455; Petty v. Wofford, 11 Ala. 143.

An order or decree of the Probate Court for the delivery of a specific legacy, or for the partial distribution of the assets or property of an estate, is always interlocutory; and in such cases, a refunding bond should always be required. Sankey v. Ellsberry, 10 Ala. 455; Clay's Dig. 196, § 23.

So much for partial settlements and distribution, and the jurisdiction of the Probate Court over them.

What, we come next to inquire, is the nature and extent of its jurisdiction in respect to the final settlement and distribution of estates.

When an executor or administrator proposes, of his own accord, to make final settlement, or when he is cited so to do by any one having an interest, the statute requires that he shall file his accounts and vouchers with the Probate Court, and also a list of the " heirs and legatees" under oath, specifying in his statement which are minors, *feme coverts*, or persons *non compotes*, that the court may know how to proceed, and in whose favor a decree is to be rendered, when the estate is ready for final distribution.

When this much is done by the executor or administrator, the statute makes it the duty of the probate judge to order publication of notice for a specified period, before the day set for hearing the final settlement, giving notice of the day appointed, and requiring all persons adversely interested to appear on that day, and contest if they see proper. Clay's Dig. 229, § 41; ib. 304, § 38.

To give the court jurisdiction to make a final settlement of the accounts of the executor or administrator, and to render a final decree of distribution thereupon under this statute, it is indispensable that the notice required by the statute should have been given, or that all the parties in interest should be shown to have been present at the settlement. And to give any validity to the decree of distribution as a final decree, it must make distribution among all those who appear by the record to be parties in interest. Whatever else a settlement made with the Probate Court, and a decree based upon such

settlement, may amount to in law, the proposition may be laid down broadly, that unless all the parties in interest are before the court, either in person or by notice, at the settlement, and unless the decree rendered at the time of the settlement, and based upon it, makes distribution of all the assets found to be in the hands of the executor or administrator, among all the parties who appear by the record to be parties in interest, such decree is not a final decree, and can claim no force or validity as such. Whatever it may be called, it is in fact interlocutory, and must be so held. Boyett v. Kerr, 7 Ala. 9; Crothers v. Ross, 17 Ala. 816; Reynolds v. Reynolds, 11 Ala. 1023; Horton v. Averett, 20 ib.

Tried by these principles, neither the settlement and decree which was made in March, 1839, by the Orphans' Court of Marion, nor the subsequent settlement and decree which was made in May, 1851, is final; the former, because the court does not pretend to distribute all the assets; the second, because no notice of the settlement was given, and there were no other parties present at that settlement but Caughman and wife on one side, and the administrator Hollis on the other. Other irregularities in the proceedings in both instances intervene; but these objections to the settlements and decrees as final decrees are fundamental, and go to the jurisdiction; and consequently we are compelled to notice them, even in the absence of an assignment of error directed to them.

The decree of the 12th May, 1851, purporting on its face to be a final decree, and the court having awarded execution upon it, although it is in fact not a final decree, must be treated as such so far as to authorize a revision on writ of error.

In the settlement between Caughman and wife and the administrator, it appears that the court below charged the administrator with interest on the money coming to Caughman's wife as her distributive share according to the order or decree of the court in March, 1839, from the date of that order until the time when he paid it; and this is assigned for error. It was entirely proper to charge him with interest upon this money remaining in his hands, unless he denied on oath that he had used it, or unless, if that statement were made by him, it were successfully controverted on the other

side. Clay's Dig. 198, § 28; Brazeal v. Brazeal, 9 Ala. 491; King v. Cabaniss, 12 Ala. 598.

For the error of rendering what purports to be a final judgment or decree in favor of one of the distributees, when the record discloses that there are others, and before final settlement, the decree is reversed, and the cause remanded.