## SMILIE *vs*. SILER'S ADM'R.

[BILL IN EQUITY BY ADMINISTRATOR FOR DISCOVERY AND ACCOUNT.]

1. *Admission implied from silence of answer.*—Under a bill filed by the husband as administrator of his deceased wife, against her surviving brothers, the failure of the defendants to deny in their answers an allegation of the bill, as to the time of the marriage between complainant and his said wife, or to express their information or belief as to its truth or falsity, is an implied admission of its truth, where it appears that all the parties resided in this State ; that the wife, prior to her marriage, lived on the same plantation with two of the defendants ; and that her marriage was known to all of them before her death.

2. *Final settlement and discharge of administrator.*—An agreement between the surviving children of an intestate, all being of full age, and one being also the administrator of the estate, by which they distributed all the property among themselves, and consented that the same should be entered up by the probate court as a final settlement of the estate and a full discharge of the administrator, (but which is not shown to have received the sanction of the probate court,) does not operate, as against the administrator of a deceased distributee, as a final settlement and discharge.

3. *What constitutes wife's separate estate under act of 1850.*—The wife's distributive share of an unsettled estate constitutes a part of her separate estate under the act of 1850, (Session Acts 1849–50, p. 65,) in which her surviving husband, as distributee, has an interest.

APPEAL from the Chancery Court of Pike.
Heard before the Hon. WADE KEYES.

THE bill in this case was filed by John R. Siler, as the administrator of his deceased wife, Mrs. Sarah J. Siler, formerly Sarah J. Smilie, against Stephen D. Smilie, Edwin R. Smilie, and Hiram A. Smilie, brothers of said Sarah J. ; and sought a discovery and account of the assets belonging to the estate of complainant's intestate. The

complainant's intestate and the three defendants, together with Perry and Raiford Smilie, since deceased, were the children and heirs-at-law of Robert Smilie, deceased, who died in Pike county, Alabama, the place of his residence, in December, 1841, intestate. Letters of administration on the estate of said Robert Smilie were granted, soon after his death, to Stephen D. and Perry Smilie; and on the death of said Perry, (at what time does not appear,) said Stephen D. became the sole administrator.

The bill alleged, that the complainant and his said wife were married on the 11th December, 1851; that, some time prior to their marriage, the said Sarah J. and her three brothers, all being of lawful age, agreed upon a division of their father's estate among themselves, without the forms of law, and each received the portion allotted to him; that Stephen D. carried off the property allotted to him on this division, but Edwin, Hiram and Sarah continued to live on the same plantation, and worked their negroes in common, until the marriage of said Sarah with complainant, when she carried away with her to her husband's residence two of the slaves which had been allotted to her; that said Sarah died on the 3d March, 1852, intestate, and without children, and letters of administration on her estate were granted to complainant on the 16th February, 1858; that in February, 1853, for the pretended purpose of dividing the estate of their father, but really for the purpose only of dividing among themselves the property belonging to the estate of their deceased sister, (complainant's intestate,) the defendants entered into a written agreement, which was made an exhibit to the bill, and which is hereinafter more particularly referred to; that the complainant, after his appointment as administrator of his wife, demanded of the defendants the property in their hands belonging to his intestate's estate, but they refused to deliver the same, and denied that he had any right thereto; that said Stephen D., as administrator of his father's estate, has paid all the debts of the estate, but has never been finally discharged as administrator; and that the complainant has no means of ascertaining what property belongs to

7

his intestate's estate, or to the estate of her deceased father, except as appears from the exhibit to the bill. The prayer of the bill is for a discovery, account, distribution of the wife's estate, and general relief.

The bill did not allege, in express terms, that the agreement shown by the exhibit to the bill was received and entered of record by the probate court; but it is several times referred to as appearing of record, as in the following averments: "The estate of said Robert Smilie, *so far as the records of said probate court show*, was kept and held together, without division or distribution, until the last of February, 1853; but your orator charges, upon information, that prior to any division or distribution *appearing of record as above*," &c. "The said Edwin, Hiram and Sarah lived together, worked their negroes in common," &c; "the said Stephen D. having long before withdrawn his share of the estate, but pretended, *as appears of record*, to have brought the share so taken off and allotted to him on the —— in February, 1853." The agreement itself is in the following words:

"State of Alabama, ⎰ We, the undersigned, Stephen
      Pike county. ⎱ D. Smilie, Edwin R. Smilie, and Hiram A. Smilie, the only surviving heirs of Robert Smilie, deceased, being of full age, and desirous of making a settlement and division of said estate by consent, hereby make known to the honorable probate court of said county, that we hereby consent and agree to the following division of such estate, as a final settlement thereof: To Stephen D. Smilie, we consent and agree, shall be decreed by said court the following negroes," &c., (specifying the slaves allotted to each, and then dividing the other personal property and the land.) "And we hereby consent and agree to a decree of said probate court in pursuance of this agreement; hereby vesting the title of the personalty as agreed upon, as well as the realty, to each of the above named, in full and absolute right, in fee simple; and we hereby consent to the above as a final settlement of said deceased, and in full discharge of the administrator, hereby waiving all irregularities in the proceedings and management of said estate. It is further

understood and agreed between the undersigned, that they shall mutually bear the costs and expenses of this settlement between them, and that the same be entered of record.   Witness our hands, this 28th February, 1853."

(Signed by the three defendants.)

The defendants filed a joint answer, in which they admitted the death of Robert Smilie, the grant of administration on his estate, the death of complainant's intestate, and the grant of letters of administration on her estate, as charged in the bill; denied that there was any division or distribution of Robert Smilie's estate during the life of complainant's intestate, or that she ever had or claimed any of the property during her coverture; insisted that the complainant had no interest whatever in his wife's distributive share of the estate, and that the agreement of February, 1853, was a final settlement of the estate, and a discharge of the administrator; and demurred to the bill for want of equity, on the ground that the complainant had an adequate remedy at law.

The only evidence in the cause was the deposition of Mary N. Sharpless, taken at the instance of the complainant, who testified to Mrs. Siler's possession of a negro girl, and to declarations by her and the defendants that the girl belonged to her.

On final hearing, on bill, answer, and testimony, the chancellor rendered a decree for the complainant, ordering an account, &c.; and his decree is now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellants.—1. It was essential to the complainant's case, that he should prove the time of his marriage as alleged; at all events, that it occurred after the 1st March, 1848.   There is no proof whatever on the point, nor is it admitted in the answer; and, since the bill does not allege that the time of the marriage was a matter within the defendants' knowledge, their failure to admit or deny the allegation as to that fact is not an admission of its truth.

2. The bill and answer both show that there was a final settlement of Robert Smilie's estate, and that his admin-

istrator was discharged. That decree must be presumed to be correct, as to notice and parties, in the absence of an averment or proof to the contrary.—20 Ala. 461. If the complainant was not a party to it, he might have propounded his interest to the probate court by petition, and had himself made a party for the purpose of reversing it on error.—22 Ala. 671, 682. If he was a party to it, his bill shows no ground of equitable relief against it, and, if it did, was filed too late.

3. The complainant has no interest in the property which he seeks to recover. At common law, as understood and recognized in this State, a distributive share of an unsettled estate " cannot be said to be in the nature of a debt," nor an estate or property "in possession, reversion, or remainder," but may, with more propriety, be classed with *choses in action*; and when it belonged to the wife, at and before her marriage, and was never reduced to possession during coverture, her right to it was good, if she survived her husband, not only against his representatives, but also against his assignee for valuable consideration.—George v. Goldsby, 23 Ala. 326; Graham v. Abercrombie, 8 Ala. 552; Bibb v. McKinley, 9 Porter, 636; Vanderveer v. Alston, 16 Ala. 494; Randall v. Shrader, 17 Ala. 333; Smith v. Hall, 20 Ala. 777; Clarke v. McCreary, 12 Sm. & Mar. 347. The "woman's law" of 1848 is not to be construed as abolishing or modifying this rule of the common law, unless by express words or necessary implication; for every rule of the common law, not inconsistent and irreconcilable with a statute, remains in force.—5 Duer's Rep. 183; 14 Barbour, 531; 2 Barbour, 316; Sedgwick on Stat. & Const. Law, 127–29, and cases cited. The words, "in possession, remainder, or reversion," as used in the acts of 1848 and 1850, are part and parcel of the description of the property which was thereby intended to be made the separate estate of the wife. They limit the more general words of the statute, and could have been intended for no other purpose.—Lowery v. Craig, 30 Miss. 19; Harker v. Harker, 3 Harring. 51; Bailey v. Pearson, 9 Foster, 77. The statute specifies three kinds of property, each distinguishable from the other, and all

recognized by our law; and the courts have no authority to add a fourth. If the act of 1850 had been intended to embrace all kinds of property, the clear and comprehensive language of section 1982 of the Code, or other terms of similar import, would have been used. The word *own*, used in the act of 1850, has always been employed to designate a complete legal ownership, and not to include a mere equitable title.—1 Peters, 559. Moreover, by the 7th section of the act of 1850, all the separate estate of the wife, thereby secured to her, is made subject, *at law*, to all debts, contracts, or engagements therein mentioned; and it certainly could not have been intended to make a distributive share of an unsettled estate, in the hands of the administrator, liable to be sold under execution at law.

WATTS, JUDGE & JACKSON, *contra*.—1. The agreement between the defendants, made in February, 1853, to which Mrs. Siler's estate was no party, was not a final settlement of Robert Smilie's estate, nor a discharge of his administrator; nor can it prevent the complainant from maintaining this bill.—Marshall v. Crow, 29 Ala. 279; Whitworth v. Hart, 22 Ala. 343; Hollis v. Caughman, and Wife, 22 Ala. 452.

2. This case does not present the question, whether the complainant, as husband, is entitled to share in his wife's estate. That question can only arise on the final settlement of his accounts as her administrator.

3. But there is no difficulty in that question. The act of 1850 was intended to prevent the husband's marital rights from attaching to any portion of the wife's property, and to declare that the whole of such property should be for the sole and separate use of the wife; excepting only a distributive share to the husband, in the event of the wife dying before him, intestate. If any doubt could exist as to the meaning of the word *property*, as used in the first section of the act, it would be removed by the broad and comprehensive definition of the word in the 10th section.

R. W. WALKER, J.—1. Where material matters are stated in the bill, which, *prima facie*, are within the knowledge, information, or belief of the defendant, if in his answer he fails to deny them, or to express his belief of their falsity, and does not state that he cannot form any belief respecting their truth, they must be considered as admitted.—Grady v. Robinson, 28 Ala. 289. The complainant's deceased wife was the sister of the defendants, and, prior to her marriage, lived on the same plantation with two of them; and, both before and after that event, resided in the same State with the other defendant. The answer clearly shows that all of the defendants knew of the marriage before the death of Mrs. Siler; but there is no express admission that it took place at the time alleged in the bill. Considering the relations between the parties, and the other circumstances referred to, it is but fair to presume that the time of the marriage was a fact of which the defendants had at least information or belief, if not knowledge; and the silence of the answer in reference to the allegation of the bill must be deemed an admission of its truth.

2. The bill alleges, that Stephen D. Smilie, who was appointed administrator of his father's estate, has never been finally discharged as such. The only discharge of the administrator set up in the answer, is one which is founded on the private settlement and division of the assets of the estate, made by the three defendants, in February, 1853, according to the written agreement attached as an exhibit to the bill. It is very clear that this private agreement between a part of the heirs-at-law, which does not even appear ever to have received the sanction of the probate court, cannot be considered a final settlement of the estate, or a legal discharge of the administrator.—Marshall v. Crow, 29 Ala. 279; Whitworth v. Hart, 22 Ala. 359; Hollis v. Caughman, 22 Ala. 482.

3. In Marshall v. Crow, 29 Ala. 278, it is said that, under the Code, (§ 1990,) the husband takes as distributee in all the transmissible estate of which the wife died the owner, whether in possession or not; in other words, that the husband is entitled to a distributive interest in all the

property to which the administrator of the wife is entitled as assets of her estate.    The 8th section of the act securing to married women their separate estates, approved February 13th, 1850, is substantially identical with section 1990 of the Code.—Acts '49–50, p. 65.

The question now to be determined is, whether the wife's distributive share in an unsettled estate is embraced by the other provisions of that act, and constitutes a part of her separate estate under it.    While it is admitted that the language of the Code is broad enough to cover such an interest, it is insisted that the words of the act of 1850 are less comprehensive; that they only include such property or estate of the wife as may be said to be either " in possession, remainder, or reversion;" and consequently, that choses in action are not within the influence of that act.    The argument in support of this position is founded upon the words of the first part of the first section of the act—" If any woman, before and at the time of marriage, shall have and own *any* property or estate, whether the same be real, personal, or mixed, in possession, remainder, or reversion, all such estate and property shall be taken," &c.

We will not pause to comment on the peculiar phraseology here employed.    The words with which the section opens are certainly of the most comprehensive character— " If any woman shall have and own *any property or estate;*" and even if there were nothing in other parts of the act to explain the sense of the succeeding words, it may well admit of doubt, whether those succeeding words would not be considered as intended, not to qualify and restrict the meaning of the terms previously used, but simply to exclude a conclusion which might otherwise be attempted to be drawn from them ; namely, that the estate or property referred to by them did not embrace any property except such as was in possession of the wife.    Whatever doubts might exist if this part of the first section were standing by itself, are dissipated upon an examination of the entire act.    The latter clause of the first section is in these words : " And no husband shall, by his marriage, acquire a right *to the property which his wife had upon his*

*marriage, or which she may after acquire* by descent, gift, demise, or otherwise, except as hereinafter provided for." The 10th section of the act provides, " that the word *property*, as used in this act, shall be construed, wherever it occurs, to include *all* moneys, stocks, credits, or other effects." Broader or more comprehensive language it would be difficult to find. The only interpretation to be put upon it, when considered in connection with the other provisions of the law, is, that the word *property*, as used in the act, not only embraces any estate or property, real, personal, or mixed, whether in possession, remainder, or reversion, but that it also includes " *all* moneys, stocks, credits, or other effects." The words employed in the Code are not more capacious than these terms ; and we have no doubt that every description of interest, which, under the Code, would constitute a part of the wife's separate estate, would also belong to her separate estate under the act of 1850.——See Campbell v. Prescott, 15 Vesey, 507 ; Hogan v. Jackson, Cowp. 299 ; Hardy v. Boaz, 29 Ala. 168 ; 1 Bouv. Law Dict., *Credits, Effects.*

Decree affirmed.