OWEN, by McIVER, Guardian, vs. PEEBLES, Executor.

[GUARDIAN'S ACCOUNTS—SETTLEMENT.]

1. *Affidavit of executor of guardian to his account current; certain matters therein, 'not admissible.*—So much of an affidavit attached to the account of the executor of a deceased guardian, filed for final settlement, as sets forth : that his testator, as he believed, did not use the funds of his ward for his own purposes ; that he (the said testator) was unable, during certain years, to loan out the funds of his ward ; and that he had on hand, when he died, a considerable sum in Confederate bills, is not available for any purpose against the ward, and if used in any way on the trial, against his objection, it is error.

2. *Guardian; when liable for hire of slave and medical bills.*—A guardian who appropriates the services of a slave belonging to his ward, is chargeable with hire ; and is responsible for medical bills incurred on slave's account, during the time of such service.

3. *Same; when entitled to credit for certain investments.*—A guardian who has invested the funds of his ward, *bona fide*, in Confederate States bonds, is entitled to a credit for the sum so invested, on final settlement. Byrd, J. *dissenting*.

4. *Same; when not chargeable with interest.*—A guardian is not chargeable with interest on funds which he could not with reasonable diligence loan out, safely.

5. *Same; what a proper credit for.*—A guardian should be allowed a reasonable credit for board furnished his ward ; and, also, for keeping of ward's horse, in a proper case.

6. *Evidence; declarations of party.*—Declarations of the executor, touching transactions of his testator, which related to said testator's guardianship, admissible for the ward.

Appeal from Probate Court of Macon county.

This was a proceeding for final settlement in the probate court of Macon county, between Howell Peebles, executor of the last will and testament of N. G. Owen, deceased, who was guardian in his lifetime, of R. L. Owen, a minor, and said R. L. Owen, by W. C. McIver, guardian *ad litem*. The said Peebles, as executor, &c., filed his account current of the guardianship of his testator, and appended thereto an affidavit, which, after making oath to the correctness of the account, proceeds in these words :

"Affiant further states, that he was upon terms of intimacy with his said testator, and that he is satisfied, and so states, that his testator did not use the funds of his ward for his own purposes. He further states, that he does verily believe, and so states, that his testator had a large portion of the funds of his said ward on hand, in the summer of 1862 and in 1863. That he often heard his said testator in 1863 and in 1864, try to loan out the funds of his said ward, and heard him speak of having the funds of his ward on hand in 1863 and 1864, and of his being unable to loan them in the years 1863 and 1864. Said testator proposed to let affiant have the funds of his ward in 1863, without interest, by affiant's keeping of the same until the close of the war. Affiant further states, that it was difficult to loan out funds in good hands, from the summer of 1862 until the death of his testator, which was in October, 1864, and that his testator had on hand at his death, in Confederate bills, about one thousand dollars."

To so much of the affidavit as is above set forth, the ward, by his guardian *ad litem*, objected, when the same. was offered with the account at the hearing, but the court overruled the objection, and said R. D. Owen, by his guardian *ad litem*, excepted.

The facts relating to other questions, upon which the court passed, will sufficiently appear from the opinion of the court.

The probate court made a decree in the case, passing and allowing the account of said appellee, as executor of said Owen, guardian, &c., and finding in his hands a balance of 1,420.92-100 dollars due said ward. From this decree the said ward appealed, and assigned the same as error.

N. S. GRAHAM, and W. C. McIVER, for appellant.
CLOPTON & LIGON, and G. W. GUNN, *contra*.

A. J. WALKER, C. J.—This was a proceeding for the settlement of the accounts of a deceased guardian by his executor.

The bill of exceptions states, that the executor *presented* his account with the ward "with his affidavit attached,"

which affidavit is set out. The affidavit consists of a statement of the correctness of the account, followed by statements, tending to show that the testator did not use the funds of his ward ; that the testator could not loan out his ward's funds, and that the testator had on hand one thousand dollars in Confederate money at the time of his death. The ward objected to the affidavit as a whole, and also to the latter statements, as to the use and loan of the funds, and as to the possession of the Confederate money. The objections were overruled, but it is not stated that the affidavit was treated or received as evidence.

So much of the affidavit as merely asserts the correctness of the account, was probably only designed to satisfy the statute which requires such accounts to be sworn to.

The remainder of the affidavit, it is contended, cannot be presumed to have been introduced as evidence, and that therefore, there was no injury in overruling the objections. The rule in such cases is, that if objections to evidence are erroneously overruled, injury will be presumed, and it is not incumbent upon the party excepting, to show affirmatively that the evidence was read.—*Buford v. Gould*, 35 Ala. 268.

But it is contended that this affidavit was merely presented as affecting the question of interest, under § 2148, (1813,) Revised Code. That section provides as follows : "If any executor or administrator uses the funds of the estate for his own benefit, he is accountable for any profit made thereon, or legal interest ; and in making their returns they must state the sum so used, the time and profit of the same, if over legal interest, or must expressly deny on oath, that they have so used such funds, and any party interested may contest the same." This statute, by its terms, applies alone to the settlement of the accounts of executors and administrators. It is argued, however, that it is made applicable to settlements of guardian's accounts by § 2449, (2039,) Revised Code. This section applies to the settlements of the accounts of guardians ; the law governing the settlement of the accounts of executors and administrators, so far "as applicable, and not in hostility with any provision of" the chapter in which it is found. The

section providing for the relief of executors and administrators from accountability for interest upon a sworn negative of their use of the funds, does not, under the section last noticed, apply to guardians, for two reasons : 1st. It is inapplicable ; 2d. It is in hostility to a section contained in the prescribed chapter.

The law relieving executors and administrators from interest upon making the affidavit, proceeds upon the ground that it is not their duty to make the investments, or to put out the funds of the estate on interest, and that they are therefore not chargeable with interest unless they have used the money, which is a general rule of the common law, subject to exceptions.—*Pearson v. Darrington,* 32 Ala· 227–269 ; *Brazeale v. Brazeale,* 9 Ala. 491 ; *Hollis v. Caughman,* 22 Ala. 478 ; *Farmer v. Farmer,* 26 Ala. 671.

The law in reference to guardians is precisely the reverse. They are responsible for interest, if they keep the ward's funds unemployed when they could have been safely invested. It is their duty to make investments, if it can be safely done by the exercise of due diligence. This is the law independently of statute.—*Bryan v. Craig,* 12 Ala. 354; *Kyle v. Barnett,* 17 Ala. 306–311 ; 2 Kent's Com., m. p. 231 ; *Allen v. Martin,* 36 Ala. 330. They cannot, therefore, be relieved from interest upon a mere showing that the funds have not been used.

Section 2426, (2024,) of the Revised Code, makes it a guardian's duty, if practicable, to lend out all surplus money of his ward, on bond and mortgage, or on good personal security. He is relieved from interest if the making of such investment was impracticable. The exemption of a guardian from interest on account of the non-user of the funds would be in hostility to this section, for it is obvious that under this section no such exemption would result from such non-user.

We conclude that the affidavit as to the use of the funds, the impracticability of loaning them, &c., was not available for any purpose against the ward, and if the affidavit was used for any purpose on the trial, it was improper.

In passing upon the affidavit we have purposely omitted to notice other objections to it, but we must not be under-

stood to deny, by not noticing them, that there are other valid objections to it.

The guardian was credited with the amount of a physician's bill, paid by him, for services rendered to the ward's slaves during a period when the guardian had hired them to himself. The guardian had no legal authority to elect to be himself the hirer of the slaves. He must *at least* be chargeable for the value of the hire during the time of his appropriation of them to his own use. The hirer is responsible, when there is no agreement to the contrary, for the medical attendance on the slaves hired.—*Gibson v. Andrews*, 4 Ala. 66. The guardian in this case is chargeable with the reasonable hire of the slaves, and the ward was not responsible for the medical bills. The bill of exceptions states that the guardian called upon five persons to appraise the hire, and that they did so, directing that the ward should pay the physician's bills. The ward was not a party to this appraisment, and is not bound by it, and it was not evidence against him.

If it appeared that the guardian could not, by the exercise of due diligence, loan out money, he should not have been charged with interest for the failure to make such loan. There was evidence on the subject of the impracticability of making loans in 1863 and 1864, but none relating to the subject in 1862. Allowing the utmost effect to the evidence, we can not perceive any reason for the exemption from interest allowed by the court from the first of June, 1862.

If the deceased guardian made the investment of Confederate money in Confederate bonds, which is set up ; if such funds belonged to the ward ; and if the guardian received therefor the certificate given in evidence, and reported the same within sixty days thereafter ; or, if a good cause for not making such report was shown, the appellee was entitled to the credit.—Acts 9th November, 1861, p. p. 53, 54 ; *Watson v. Stone* ; *Dockery v. McDowell* ; *Nelson v. Cook*, in manuscript.

Under the circumstances above stated, the guardian's right to a credit is plain. It may be, however, (as we infer from the transcript, was the case,) that the investment was

not reported in sixty days, and that there was no good cause shown for not making such report, as required by the act of the 9th November, 1861. It is proper for us to inquire what are the rights of the parties in the absence of such report, or a good cause for not making it. In the case of *Dockery v. McDowell*, in manuscript, (Januaay, 1867,) in reference to the absence of such a report, we briefly said : " If that be admitted, it can not affect the result, for before the administrator could be charged on account of the investment of Confederate treasury-notes in that way, it should appear that the estate was injured thereby." In ascertaining the grounds of that decision, it must be observed that the third section of the act of the 9th November, 1861, bestows an unrestricted and unconditional authority to make the investment. The next section (the fourth,) requires a report of the investment within sixty days, unless good cause should be shown to the proper court for not making such report within that time. This (the fourth) section declares, as the consequence of not making the report, or showing good cause for the omission, that the credit shall not be allowed. It is obvious, that the authority to make the investment is exercised antecedently to the report, and to the time for the making thereof. The failure to make the report operates a forfeiture of the right to a credit. It is in the nature of a penalty. Its design was to guaranty notice and publicity of the transaction. It is a rule of notification and evidence of a past transaction. No action by the court upon the report is contemplated.

It results, that there was no conversion of the funds in their investment in Confederate bonds, which would superinduce a responsibility for any loss which might ensue. There was simply and substantially a declaration, that by a subsequent omission in a matter of notification and evidence of the transaction to the court and to all persons interested, the right to a credit was forfeited. This penalty or forfeiture was subject to repeal or modification by the legislature, and such legislative action would neither impair the obligation of contracts nor take away vested rights.— *Satterlee v. Mathewson*, 2 Peters, 380 ; *Watson v. Mercer*,

8 Péters, 88 ; *Webb v. Dew*, 17 ib. 576 ; *Pope v. Lewis*, 4 Ala. 487.

The fourth section of the act of 23d February, 1866, p. 115, must be understood to authorize the credit for such investment, if made *bona fide*, without regard to the report thereof, and as abrogating the prescribed forfeiture for lack thereof. At the same time, if the omission to make the report has produced injury to the ward, we think h e should be charged to the extent of such injury.

The declaration of the executor, that the certificate was first taken in the individual name of the guardian, and afterwards changed to his name as guardian, we think, was admissible evidence for the ward. It was a slight and indeterminate circumstance, and if standing alone was probably entitled to but little if any consideration, but it was pertinent to the question whether the investment was an individual or official transaction, and, in connection with other circumstances, might have acquired some significance. The question was whether the funds belonged to the ward. If the guardian shows that they did, his right to a credit would not be affected by the change of the certificate.

As to the charge of board against the ward, the evidence may not be the same on another trial. The guardian should be credited with the reasonable value of proper board furnished the ward. He should also be allowed a reasonable compensation for the furnishing of a horse, if it was needed and proper for the use of the ward, unless it was gratuitously supplied.

The evidence touching the allowance of counsel fees is not very full. All the evidence is not set out. From what we have before us, we can not say that the allowance was too great. Our numerous decisions on this subject, set forth the principles which should guide the court on another trial. The evidence may not be same on a future settlement, and we do not deem it necessary to say more in reference to it at this time.—*Ivey v. Coleman ; Harris v. Parker*, in manuscript; *Smith v. Kennard*, 38 Ala. 695, and authorities therein cited ; *Anderson v. Anderson*, 37 Ala. 682.

BYRD, J.—Not concurring in so much of the opinion as

is in conflict with the dissenting opinions in the cases of *Dockery v. McDowell, Adm'r, and Scheible v. Bacho,* in manuscript.

