Argued 3 December; decided 30 December, 1901.

## MILLS' ESTATE.

## KNIGHT v. HAMAKAR.

[67 Pac. 107.]

SUFFICIENCY OF PETITION TO REMOVE ADMINISTRATOR—JUDICIAL NOTICE.

1. A statement in a petition for the removal of an administrator that the estate is indebted to petitioner, that certain prior proceedings therein, which are referred to, show the nature and history of petitioner's claim, is not a statement of a conclusion, but is a sufficient allegation of petitioner's interest to show his right to petition under Hill's Ann. Laws, § 1094, authorizing any creditor or person interested in an estate to petition for the removal of an administrator, as the court will take judicial notice of the record of such former proceedings.

ALLOWANCE OF ATTORNEYS FEES TO ADMINISTRATOR—STATUTES.

2. Section 1178 of Hill's Ann. Laws, authorizing the allowance of attorney's fees to an administrator in the settlement of his account, does not limit the right to grant such fees to the final settlement, and the county court may make allowances to the attorneys during the time the estate is being settled.

REMOVAL OF ADMINISTRATOR—WHO MAY PETITION FOR.

3. A person who has performed services for an estate, a claim for which has been allowed by the county court, has an interest in such estate sufficient to authorize him to petition for the removal of the administrator, under Hill's Ann. Laws, § 1094, providing that any creditor of an estate, or any person interested therein, may apply for the removal of an administrator.

NATURE OF CLAIM OF ATTORNEY FOR AN ESTATE.

4. The claim of an attorney against an administrator for services rendered to an estate is a claim against both the administrator and the estate, and it is not affected in any way by the failure of the administrator to perform his trust duty.

REASONS FOR REMOVAL OF AN ADMINISTRATOR.*

5. Under Hill's Ann. Laws, §§ 1094, 1100, authorizing the removal of any administrator who has been unfaithful to or neglected his trust, an administrator who has sold real estate under order of the county court and reported

---

*NOTE.—Under previous rulings of this court executors or administrators may be removed by county courts, either *sua sponte* or on the petition of some interested person, for neglecting to file an inventory as required by the statute (*Holladay's Estate,* 18 Or. 168, 22 Pac. 750; *Mills' Estate,* 22 Or. 210, 29 Pac. 443; *Barnes' Estate,* 36 Or. 279, 59 Pac. 464, 5 Prob. Rep. Ann. 323,

that the sale was for cash, and then, in pursuance of an order of confirmation, has delivered to the purchaser a deed, all without receiving any money, is guilty of such neglect of his trust as to justify his removal.

DENIALS ON INFORMATION AND BELIEF.

6. Where a petition for the removal of an administrator charges that the administrator made certain admissions showing disobedience of an order of court, a denial of such statement on information and belief in the answer of the administrator may be stricken out, as a denial on information and belief of matters presumptively within the defendant's knowledge is insufficient.

STRIKING OUT IMMATERIAL AVERMENTS.

7. Where a petition for the removal of an administrator is based upon the petitioner's claim as a creditor of the estate, and the answer denies that the estate is indebted to petitioner, a further denial that the petitioner has any interest in the estate, or to the proceeds, or in the disposition thereof, is not responsive to any averment of the petition and may be stricken out.

IDEM.

8. Averments of new matter in an answer, not connected with any matter stated in the complaint, are immaterial and should be stricken out on motion; as, where a petition for the removal of an administrator is based on an allowed claim for attorney's services performed for the estate under a prior administrator, and there is no claim for services since the defendant was appointed, an allegation in the answer that petitioner performed no services for the estate or the defendant since the latter was appointed is immaterial, and should be stricken out.

EVIDENCE OF ALLOWED CLAIM AGAINST AN ESTATE.

9. An order of a county court that a certain sum demanded for services to an administrator "is a legal and valid claim against said estate for expenses of administration," establishes the demand as an allowed claim, and makes the owner thereof a creditor of the estate.

From Klamath: HENRY L. BENSON, Judge.

This is a proceeding in The Matter of the Estate of W. H. Mills, Deceased, to remove J. W. Hamakar as administrator. The county court having granted the prayer of the petitioner, the case was removed to the circuit court, with the same result, whereupon the administrator again appealed.     AFFIRMED.

For appellant there was a brief over the names of *Reddy, Campbell & Metson* and *J. W. Hamakar,* with an oral argu-

with note, Effect of Failure to File an Inventory) ; for general mismanagement and neglect (*Partridge's Estate,* 31 Or. 297, 51 Pac. 82) ; or because the officer's personal interests are in conflict with his official duties (*Mills' Estate,* 22 Or. 210, 29 Pac. 443 ; *Marks* v. *Coats,* 37 Or. 609, 62 Pac. 488).

—REPORTER.

ment by *Mr. Hamakar, in pro. per.*, and *Messrs. J. A. Jeffrey* and *Geo. G. Bingham.*

For respondent there was an oral argument by *Messrs. R. J. Fleming* and *John H. McNary.*

MR. JUSTICE MOORE delivered the opinion.

This is a proceeding, originally commenced .in the county court of Klamath County, to remove an administrator. The petition of N. B. Knight therefor states, in effect, that the estate of W. H. Mills, deceased, is indebted to him in the sum of $1,329, with interest from March 12, 1892, as appears from the orders and decrees of said court of March 11, 1892, January 8, 1895, and July 12, 1895, no part of which has been paid; that since September —, 1894, J. W. Hamakar has been and now is the duly appointed, qualified, and acting administrator *de bonis non* of said estate; that in pursuance of an order of said court, Hamakar on May 4, 1895, sold to L. T. Garnsey certain real property belonging to said estate for the sum of $3,440, and two days thereafter filed a report showing that said sale had been made for cash; that, relying thereon, said court confirmed the sale, and ordered a conveyance of the property to the purchaser, in pursuance of which Hamakar executed and delivered a deed thereof to Garnsey; that the report of said sale was false and fraudulent, and that the purchaser had not then nor has he since paid for the land so purchased; that Hamakar, in the presence of certain persons, stated that Garnsey had not paid him the amount of his bid; that the administrator has violated his trust, and is wasting the estate, to the probable loss of the petitioner, who prays that he may be removed and required to pay into court the money so due from Garnsey to said estate. A demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of suit, or to entitle the petitioner to the relief demanded, having been overruled, an answer was filed denying the material averments of the petition, and alleging, in substance, that Hamakar, on October 8, 1895, accounted for

the money received from said sale; that the petitioner has a claim for services alleged to have been performed for a former administrator of said estate, the validity of which is disputed, and the controversy in respect thereto is pending in the supreme court. The court, upon motion, struck from the answer the following denials: ''As to whether or not, on or about November 28, 1895, or at any other time, at any place, or in the presence of any person or persons, said administrator ever stated that said Garnsey had or had not paid him the amount of his bid for said, or any, real property, said administrator has no knowledge or information sufficient to form a belief, and therefore denies the same. Further answering said petition, said administrator denies that petitioner has any interest in said estate, or in the proceeds thereof, or the disposition made, or to be made, of the same.'' The court also, upon motion, struck from the answer the following allegation: ''That said petitioner has performed no service for this administrator, or for said estate, since the beginning of his administration thereof, and that he has no other claim against said estate than as above stated.'' The allegations of the new matter remaining in the answer having been denied in the reply, a trial was had, resulting in the relief prayed for, whereupon Hamakar appealed to the circuit court for said county, which affirmed the order of the. county court, and from the latter decree he appeals to this court.

1. It is contended by appellant's counsel that the allegation in the petition that the Estate of W. H. Mills, deceased, is indebted to the petitioner, etc., is an averment of a conclusion of law, that the petition does not state facts sufficient to constitute a cause of suit, or to entitle the petitioner to the relief demanded, and that, notwithstanding an answer was filed after the demurrer was overruled, the defect in the petition was not thereby waived, and may be insisted upon in this court. The statute prescribing the method of securing the removal of an executor or administrator provides, in effect, that any creditor of the estate, or other person interested therein, may apply for the removal of such representative who has in any way

been unfaithful to or neglected his trust, to the probable loss of the applicant. Such application shall be by petition, and upon notice to the administrator, and if the court find the charge to be true it shall make an order removing him and revoking his letters: Hill's Ann. Laws, § 1094. It will be remembered that the petition calls attention to certain orders of said court, whereby Knight claims the estate is indebted to him in the sum specified. It appears from the transcript that the decrees of the county court referred to, when examined in the order in which they were made, show (1) that Fred H. Mills, a former administrator, was ordered to sell the real property of said estate to pay the claims against it and the expenses of the administration; that the petition upon which said order was based shows that Hamakar's claim of $2,500 had been allowed by said administrator, who also claimed, on account of expenses incurred in the performance of his trust, the sum of $1,329 due Knight, as attorney fees; (2) that the objections of the heirs of the decedent, interposed to Knight's claim, were dismissed; and (3) Knight's claim, an itemized statement of which, purporting to have been examined and allowed December 11, 1891, by Mills as administrator, and filed September 3, 1894, amounting to the sum of $1,329, with interest at eight per cent from March 11, 1892, was decreed a legal and valid claim against said estate.

The rule is well settled that a county court, in determining the sufficiency of a petition for the removal of an administrator, should take judicial notice of its records and prior proceedings in the administration of the estate: *In re Bennett* (D. C.) 84 Fed. 324; *Pittel* v. *Fidelity Mut. Life Assoc.* 86 Fed. · 255 (30 C. C. A. 21); *State* v. *Bowen,* 16 Kan. 475; *Robinson* v. *Brown,* 82 Ill. 279; *State* v. *Postlewait,* 14 Iowa, 446. In *White* v. *Spaulding,* 50 Mich. 22 (14 N. W. 684), a case upon which appellant's counsel rely, it was held that a petition for the removal of an administrator is insufficient if it is not presented by persons interested, or does not allege sufficient cause. Mr. Justice COOLEY, speaking for the court in respect to two applicants for an order removing an administrator, says:

"The other petitioners claim to be principal creditors. The fact that they are such is left to stand upon their naked assertion, without specification or explanation. What are their claims, and when did they accrue? Neither the record nor the petition gives us any light on that subject." In the case at bar, the petition avers that Knight is a creditor of said estate, and the record, of which the county court was bound to take judicial notice, discloses the nature of his claim, when it arose, what it was for, and when it was allowed. His claim for attorney fees was an expense incurred by a former administrator in the performance of his duties, presumably incident to his trust, for the payment of which his successor became liable: *Willcox* v. *Smith,* 26 Barb. 316, 328; *Hoes* v. *Halsey,* 2 Dem. Sur. 577; *Mygatt* v. *Willcox,* 1 Lans. 55; *Ferrin* v. *Myrick,* 41 N. Y. 315; *In re O'Brien's Estate* (Sur.) 25 N. Y. Supp. 704.

2. It is argued however, that Mills, the former administrator, never having settled his accounts as the representative of said estate, was not entitled to be allowed any sum as attorney fees, and, this being so, Knight, his attorney, is not a creditor of the estate. The statute provides that an executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel: Hill's Ann. Laws, § 1178. The transcript shows that Fred H. Mills was removed as administrator because he was adversely interested in certain property claimed to belong to the estate [*Mills' Estate,* 22 Or. 210 (29 Pac. 443)], but it fails to show that he ever made a final settlement with the county court in relation to his trust. He made several reports, however, purporting to show the condition of the estate, and the question to be considered is whether his failure to make a final settlement prevents the court from allowing reasonable attorney fees incurred while he was discharging his trust. The statute does not limit the authorization of such fees to the final settlement of the accounts of an administrator or executor, so as to preclude an

allowance therefor prior to such settlement, and the county court, being a court of general and superior jurisdiction in probate matters [*Tustin* v. *Gaunt*, 4 Or. 305; *Farley* v. *Parker*, 6 Or. 105 (25 Am. Rep. 504); *Monastes* v. *Catlin*, 6 Or. 119; *Adams* v. *Petrain*, 11 Or. 304 (3 Pac. 163); *Steele* v. *Holladay*, 20 Or. 70 (25 Pac. 69, 10 L. R. A. 670)], we think may allow an attorney fee, even if no final report be filed.

3. It is possible that Knight, as a creditor of Mills, the former administrator, was not a creditor of the estate in the strict sense of the term (*Carroll* v. *Huie*, 21 La. Ann. 561), but he had such a claim against the administrator personally as might, upon the approval of the county court at the final settlement of the estate, become a valid charge against it, so as to give him an interest therein; and, this being so, the statute adverted to (Hill's Ann. Laws, § 1094) made him a competent petitioner for the removal of the administrator. The petitioner alleged that the estate was indebted to him, thereby impliedly averring that he was a creditor of it; but as the facts constituting his right as such are set out in the petition, from which it appears that he is interested in the estate, he is entitled to the relief warranted by the facts alleged, notwithstanding the averment of indebtedness is the statement of a mere legal conclusion: 16 Ency. Pl. & Pr. 794. While the claim of an attorney for services rendered to an executor or administrator is originally against the representative of the estate, when examined, approved, and allowed by the county court, it becomes a claim against the estate; but, having been made without notice to the creditors, and upon an *ex parte* application therefor, the order making the allowance is interlocutory, and upon objection thereto may be subsequently modified or set aside by the court upon the final settlement of the estate, or, upon its refusal to do so, by the circuit or supreme court upon appeal: *Osburn's Estate*, 36 Or. 8 (58 Pac. 521); *Hollis* v. *Caughman*, 22 Ala. 478. Knight's claim was examined and allowed December 11, 1891, by Mills as administrator, who was authorized to employ an attorney when necessary, and under the statute had power to bind the estate

to pay for his services such a sum as they were reasonably worth: Hill's Ann. Laws, § 1178; *McCullough's Estate,* 31 Or. 86 (49 Pac. 886). It was filed in the county court prior to the act of February 25, 1895, amending Section 1170, Hill's Ann. Laws (Laws 1895, p. 89), requiring the executor or administrator of an estate to render an account in April and October of each year, so that if notice to interested parties can be implied from the allowance of an item of expense incurred in the management or settlement of an estate, from the filing of the account at the times prescribed, such notice cannot be invoked in this case, and hence the allowance of the claim by the administrator does not make out a *prima facie* case in favor of its validity, if objected to on final accounting, but the claimant must substantiate the reasonableness of the several charges by proof thereof: *Chambers' Estate,* 38 Or. 131 (62 Pac. 1013). It may be, however, that the order of the county court establishing the validity of Knight's claim is binding upon all parties in interest; but to have this effect the record must show that notice of the time appointed for the hearing thereof was given, or that said parties were present at the settlement: *Hollis* v. *Caughman,* 22 Ala. 478. What has been said in respect to this claim is not intended in any manner to impugn its validity, but to show that, if it has been allowed in the manner prescribed by law, he is a creditor of the estate; if not, he has a claim against it which makes him interested therein, so that in either event he is a proper person to petition for the removal of the administrator.

4. An attorney who is retained by an executor or administrator in any litigation necessary to the decedent's estate, or whose advice or counsel is requisite to enable such representative properly to discharge his duty in the performance of his trust, has a valid claim against the person by whom he is employed; but the executor or administrator, being a trustee and agent of the estate, the attorney has also a valid claim against it for his reasonable fees. If the representative thereof were authorized to employ him, and the contract of employment be valid when made, and the services actually rendered

and necessary to the estate, it, as the principal, is liable to him for the payment of such fees, regardless of whether the executor or administrator, as its agent or otherwise, performs his duty.

5. It is contended that the petition does not state facts sufficient to support the order removing Hamakar as administrator, and hence that the court erred in making it. Mr. Schouler, in his work on Executors and Administrators (Section 157), in discussing this subject, says: "As a general rule, where the probate court has once regularly conferred the appointment, it cannot remove the incumbent afterwards except for causes defined in the statute." The statute provides, in effect, that whenever it appears probable to the court or judge that an executor or administrator has become of unsound mind, or been convicted of any felony, or a misdemeanor involving moral turpitude, or who has in any way been unfaithful to or neglected his trust, to the probable loss of any heir, legatee, devisee, creditor, or other person interested in the estate, it shall be the duty of such court or judge to cite such executor or administrator to appear and show cause why he should not be removed, and, if he fail to appear or to show sufficient cause, an order shall be made removing him and revoking his letters: Hill's Ann. Laws, §§ 1094, 1100. The petition avers, in substance, that Hamakar, having been authorized to sell the real property belonging to said estate for cash, made a sale thereof under the power conferred, and falsely reported that he had received from Garnsey the cash therefor, and that the county court, relying thereon, confirmed the sale, in pursuance of which Hamakar executed and delivered a deed of the premises to the purchaser. We think the petition specifically stated facts which, if true, conclusively showed that the administrator had neglected his trust, within the cause defined by the statute.

6. It is contended that error was committed in striking from the answer certain denials and the allegations of new matter. It will be remembered that the petition stated that Hamakar in the presence of certain persons, declared that Garnsey had

not paid him the purchase price of the real property so sold. This was not á statement of any material fact constituting a cause for the administrator's dismissal, but was an attempt to plead evidence, and ought to have been stricken out on motion. Instead of doing so, Hamakar answered, denying the statement upon information and belief. This he was not permitted to do, for if the facts averred in the declaration are presumptively within the defendant's knowledge a denial on information and belief is insufficient: 1 Ency. Pl. & Pr. 811; *Hanna v. Barker,* 6 Colo. 303; *Humphreys* v. *McCall,* 9 Cal. 59 (70 Am. Dec. 621); *San Francisco Gas Co.* v. *City of San Francisco,* 9 Cal. 453. Thus, if it is averred that acts are done in his presence, a denial of the character averred is not sufficient: *Edwards* v. *Lent,* 8 How. Prac. 28. No error was committed in striking out this denial.

7. The answer denied that said estate was indebted to Knight in the sum of $1,329, or in any sum; and as his petition for the removal of the administrator was based upon his claim as a creditor of the estate, the denial to the effect that Knight has any interest in said estate, or in the proceeds thereof, or the disposition made or to be made of the same, is not responsive to any averment of the petition, and being a repetition of a preceding denial no error was committed in striking it out.

8. The averment of new matter in the answer to the effect that Knight had performed no service for the estate or for Hamakar since he was appointed administrator thereof, and that the petitioner has no claim against said estate, except as above stated, is immaterial, for it appears from the petition that Hamakar was appointed administrator in September, 1894, while Knight's claim for attorney fees matured March 11, 1892; and as no issue existed in respect to this averment, no error was committed in striking it out.

9. It is maintained that the evidence fails to show that said estate was indebted to Knight. We think the following finding of the county court, made July 12, 1892, viz.; "that said claim of N. B. Knight for services and expenses as attorney

40 OR.—28.

in said estate, amounting to $1,329, together with interest
thereon at the rate of eight per cent per annum from March
11, 1892, is a legal and valid claim against said estate for ex-
penses of administration,''—clearly establishes a claim against
said estate, and that until the order based thereon is set aside,
modified, or reversed, the estate was indebted to Knight in the
sum so specified.

Considering the case upon the merits, the transcript shows
that Fred H. Mills, the former administrator, not having sold
any of the real property of said estate under the authority
delegated March 11, 1892, the county court, January 8, 1895,
in pursuance of Hamakar's petition therefor, ordered him to
sell said property at public auction for cash, payable in lawful
money of the United States upon the confirmation of the sale.
Hamakar's report was filed on May 4, 1895, and shows that
on that day, in pursuance of the order of said court, he sold
at public auction certain real property of said estate to Garn-
sey for the sum of $3,440, upon the terms prescribed, receiving
therefor, at the time of sale, 20 per cent. of the purchase
price, the remainder to be paid upon the confirmation of the
sale.  No objection to said report having been made, the court,
on May 7, 1895, ordered the sale confirmed, and directed Ham-
akar to execute and deliver a deed conveying said real prop-
erty to the purchaser upon his payment of the full purchase
price.  It is alleged in the petition, and not denied in the
answer, that Hamakar on June 18, 1895, executed and deliv-
ered to Garnsey a deed to said real property, which deed is
recorded in book No. 9, records of deeds of said county, at
page 393, *et seq.*  The answer admits, "that said L. T. Garnsey
had not, at the time of reporting said sale, paid the full amount
of his said bid, but denies that any part of said bid remained
unpaid at the date of the commencement of this proceeding,''
which was begun March 25, 1896, by filing the petition.  When
it is remembered that 20 per cent. of the purchase price was
paid at the time of the sale, and that the deed was delivered
June 18, 1895, at which time the remainder was payable, the
denial that any part of said bid remained unpaid March 25,

1896, would seem to be an admission that Garnsey did not pay the remainder of his bid upon receiving the deed. John F. Miller, a witness for the petitioner, testified that Hamakar, at Klamath Falls, in said county, on November 28, 1895, stated in his presence, and in the presence of others, that he was going to San Francisco, and upon his return would pay the money, which was in his hands on account of the sale of said property, to the parties to whom it was due. The petitioner, as a witness in his own behalf, testified that, on the occasion referred to by Miller, Hamakar said in their presence, referring to the money due from Garnsey on his purchase of said property, that when he went below, meaning to San Francisco, California, he would make them agree to pay this money over, and that upon his return he, in answer to the inquiry, "Why didn't you have Garnsey pay that money in?" said, "No, they wouldn't pay it over,"—and he did not believe they had any money to pay over; that, Hamakar having gone to San Francisco, Knight sent him a telegraphic message February 3, 1896, requesting him to deposit with a firm in that city $600 on account of the attorney fee claimed by him, and on the same day received from him a message as follows: "Cannot; no money here yet." John S. Orr, a witness for petitioner, testified that about March 6, 1896, Hamakar in answer to the question whether Garnsey had paid him the money due on account of the purchase of said land, said "No." Hamakar was present at the trial, but did not become a witness in his own behalf so as to deny the declarations so imputed to him in respect to his failure to collect the money due from Garnsey. In our opinion he neglected his trust by failing to comply with the order of the county court, in delivering the deed to Garnsey without having received the remainder of the purchase price, and, this being so, the decree of the circuit court from which this appeal was taken is affirmed.     AFFIRMED.