## WILLIAM B. SKELLINGER *vs.* EDWARD S. SMITH.

The highest possible evidence of a deed and of its contents, before and since the registration laws, is the deed itself; the execution and delivery having first been duly proved.

The record of a deed, showing it to bear a given date, must yield to the deed itself, showing a different date.

A privy to a deed, is bound by the notice it imparts, whether possessed of actual notice or not.

Open, notorious and exclusive possession is notice to the world of the real title of the one in possession.

The statute of 1867, curing defectively acknowledged deeds is constitutional and applicable to the case of a married woman.

Error to Second Judicial District holding terms at Vancouver.

*Chas. H. Bryan* for plaintiff in error.

*William Strong* for defendant in error.

Opinion by GREENE, Associate Justice.

The points of plaintiff in error, on the chains of title, may be reduced to two heads, according as they are based: First, on the misrecord of the deeds from Davenport to Mrs. Peacher, dated August 25, 1860, or second, on the deed from Mrs. Peacher and husband to Hensil, dated January 29, 1861.

In regard to the former deed, his point is, that because the county records contain nothing that purports to be a record-copy of the deed of August 25, 1860, but do contain, from Davenport to Mrs. Peacher, what and only what purports to be a record-copy of a deed dated August 25, 1863, that, as far as the rights of this plaintiff in this suit are concerned, it is to be considered, that Mrs. Peacher did not acquire title till 1863, and that she did then acquire title to the land in question by a deed, of which the record is a true copy, which title she afterwards deeded to plaintiff's grantor.

This point is grounded on, either untruth in fact, or misconception of law. Either, first, it stands upon the untruth, that there actually was a deed of 1863; this was matter of fact to be resolved by evidence; and the evidence clearly shows that there never was such a deed. Or else, second, it stands upon the misconception of law, that a record is equivalent to a deed, or at least conclusive evidence of a deed. It is neither. It is merely evidence subject to contradiction. Neither the law providing for the record of deeds (Laws 1863, page 430, section 4), nor the law providing for the receipt of copies of the record in evidence (Laws 1869, page 315, section 27; page 115, section 427), reduces the authenticity of a deed as evidence of itself and contents, nor elevates as evidence a certified copy of the record, or the record itself above the deed. The highest possible evidence of a deed and all in it, since, as well as before, the registration laws, is the original deed itself, the execution and delivery whereof has first been duly proved. Title is acquired through the deed, and not through the copy of it. The record,

being evidence, may operate to prove the existence, or bring home notice, of title, but cannot operate to grant it.

Plaintiff in error says, "We are the only persons trying the title of Mrs. P. since 1863. What notice had we that the defendant had possession of a Davenport deed to Mrs. P. of the date of 1860?" The answer is easy and conclusive. If plaintiff in error has acquired any title at all, he has acquired it through the deed which appears of record as dated 1863, but which in reality, as clearly shown in evidence, was dated 1860, and is in fact the very deed of 1860. He must have title if any, as an assignee under that very deed. If as assignee, then as privy, clothed with an indivestible notice—a notice which, no matter how ignorant he may be of it in fact, the law will not permit him to deny. Besides, the possession of defendant and his grantors has always, as the evidence shows, been open and notorious, exclusive and uninterrupted; and this has been notice to plaintiff in error and all the world of his real title, whatever it might be. Again, defendant's chain of title from Mrs. P. was on record in December, 1870, notice to plaintiff in error and all the rest of the world, long before Mrs. P's deed to Dodge & Cruikshank, under which he claims was executed.

The plaintiff is reduced to the necessity of claiming through the original deed, dated really 1860, and misrecorded as dated 1863. Through that deed he must derive title, if at all. And he can do it provided Mrs. P's deed to defendant's grantor Hensil can be shown inoperative. Accordingly, on this deed he makes two points, First, That Mrs. P. had a right to repudiate her deed to Hensil, for failure to make payments, and that her deed to plaintiff's grantors was such rightful repudiation; and Second, That the deed to Hensil was void, because not well acknowledged at the time, and the curative act of the Territorial Legislature passed 1867 was impotent to heal it.

The former point, assuming the law in it good, cannot be supported, because there is no evidence that Hensil failed to make payments. No such evidence, indeed was admissible. Being offered, it was properly excluded.

We think the latter point is also unmaintainable. That the curative act of 1867, was intended to cure such defective acknowledgments as that of this deed, and is as well calculated to effect its object with regard to this particular deed as any act that might have been drawn for the purpose, seems to us clear, and would probably be conceded by plaintiff.

But it is asserted that it interferes with and affects private contracts and engagements *bona fide*, and without fraud previously formed, and is therefore inconsistent with the organic act of this Territory, and the ordinance of 1787. (Organic act, sections 6, 12; Organic act of Oregon, section 14; Ordinance of 1787, Art. 2); and, in particular, that it interferes with and affects Mrs. P's deed, or intended deed, to Hensil. Here plaintiff in error seems in one breath to blow hot and cold; he asserts, that the deed to Hensil was a nullity, no contract, and at the same time, in order to apply to it the ordinance of 1787, claims that it is "a contract previously formed." Now, if what passed between Mrs. P. and Hensil was absolutely nothing—not merely invisible through the statutory lens, but outside of nature and beyond the habitual range of constitutional vision—then, indeed, the statute of 1867 is powerless to make a deed of it; not, however, because that would be contrary to the clause referred to of the second article of the ordinance of 1787, but because it would be the taking away property of an individual without due process of law, and contrary to another clause of that article. But, if there were, as here we think there were, the natural essentials of a contract, and even more —parties, mutual understanding and considerations, definite intent, a writing expressive thereof signed, sealed and delivered, and possession of land given on the faith of all this— then there was, in nature and in the forum of conscience, a contract complete, body and soul, which might be shut out from the secular courts for lack of a statutory gown, and yet might be recognized by the announcers of constitutional principles, or by the statute makers who prescribed the legal uniform. With whatever contract there was, and so far as it was to be regarded, the legislators of 1867 did not interfere, nor did they within

the meaning of the second article of the ordinance, affect it. On the contrary, they gave it freedom, left it to its own affections, and declared that it should not be affected or interfered with, not even by their own prior acts. See, *Satterlee vs. Matthewson*, 2 Peters, 380; *Watson, et al., vs. Mercer*, 8 *ib.*, 88, 110, 111.

Still, though clearly not contrary to the clause intended of the second article of the ordinance, it may speciously be argued, that the statute of 1867, in making operative as a transfer of property, a writing which was previously legally void, is doing what it cannot rightfully do, namely, depriving Mrs. P. of her vested rights in property, contrary to the law of the land and without compensation. But this reasoning has, so far as we can ascertain, been ultimately regarded unsound by all the courts to whom the matter has ever been presented. (Cooley Const. Lim., 377, and cases cited N. 3, 378 and cases there cited.) And, we think, rightly so regarded. For, certainly, Mrs. P.'s vested rights, after her deed to Hensil, and transfer of possession of the land, were, if any, naked legal rights, unasserted and without equity; and such rights nothing in the nature of a constitutional safeguard was ever designed to protect. We conclude, that the curative act of 1867, was good to make valid the deed to Hensil of 1861. That deed being good, the title passes, through it and unquestioned deeds, to defendant.

As the evidence on the trial shows clearly that Mrs. P. never got any title to the land in question, subsequently to her deed Hensil, it becomes unnecessary to pass on the question mooted in the briefs, whether she and her grantees would be estopped by her covenant of warranty from asserting an after acquired title.

It is assigned as error, that the judge below refused to allow the witness and plaintiff Skellinger, to answer the question:

"Have you ever inquired of Mr. Smith, the defendant, to see a deed purporting to be executed by John Davenport to Mrs. Marietta Peacher of the lands in dispute, before you purchased the land?"

This question was doubtless, and naturally, understood by the judge below to be intended to elicit an answer showing ignorance by the plaintiff of the very deed which, if he has any title, must be his source of title, and, in that view was properly excluded. The record fails to show the competency and relevancy of the question in any aspect, and it does not appear that plaintiff has been prejudiced by its exclusion.

Let the judgment of the District Court be affirmed.