## J. YOUNG SCAMMON
### v.
## THE COMMERCIAL UNION ASSURANCE COMPANY.

1. LOANS BY FOREIGN CORPORATIONS—MORTGAGE FOR, INVALID PRIOR TO ACT OF 1875.—Corporations chartered under the laws of another State could not, prior to the Act of 1875, make loans of money in this State and take real estate security therefor, and a mortgage given as security for such a loan was invalid from its delivery.

2. SALE UNDER VOID MORTGAGE.—Such a mortgage being void from its inception, a sale and conveyance thereunder would be nugatory, and would not divest the mortgagor or owner of his interest in the mortgaged premises.

3. RETROSPECTIVE STATUTE.—Unless there is a constitutional inhibition, a legislature may, when it interferes with no vested rights, enact a statute to validate an invalid contract, or to ratify and confirm any act it might lawfully have authorized in the first instance; but there is a substantial difference between a statute which validates an invalid contract and one which impairs the obligation of a valid one.

4. ACT OF 1875 AUTHORIZING FOREIGN CORPORATIONS TO LOAN MONEY IN THIS STATE.—The intention of the legislature, as derived from the language of the Act, was to confirm and validate prior loans made, and securities upon real estate taken by foreign corporations, and to provide a remedy. It was retrospective for the purpose of validating prior loans and securities, but prospective only as to the remedy. It was not retrospective as to acts *in pais* which had been done under such invalid mortgages, such as a sale and conveyance of the mortgaged premises.

5. STATEMENT.—Appellant brought suit upon a policy of insurance for

a loss thereunder, and it was contended by the insurer that prior to the loss all the interest of appellant in the premises had become divested by virtue of a sale of the premises, under a mortgage given as security for a loan by a foreign corporation.

6. INSURANCE POLICY—CONDITION—BREACH.—Where a policy of insurance contained a condition that if the property should be sold or otherwise disposed of, so that the interest of the assured therein should cease, the insurance should immediately terminate; a sale of such property under a mortgage given to a foreign corporation prior to the act of 1875 being invalid, does not divest the owner of his interest in the premises, and constitutes no bar to his right of action upon the policy.

7. VESTED RIGHTS.—The policy of insurance is a valid contract, and under it upon the happening of the contingency insured against, a right of action accrued to and became vested in the assured, and a loss occurring, such right of action could not be taken away by the subsequent enactment of a statute rendering valid prior loans and securities made by foreign corporations, under one of which class the interest of the plaintiff in the insured premises had been attempted to be divested by a sale prior to the loss occurrin.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. Opinion filed August 5, 1880.

This was an action brought July 6, 1875, by appellant Scammon against appellee, the Commercial Union Assurance Company, upon a policy of insurance bearing date, January 2, 1874, issued by the latter to the former, whereby the defendants, in consideration of the sum of $62.50, paid by plaintiff as premium, insured the building of the plaintiff known as No. 209 Michigan avenue, in the city of Chicago, in the sum of five thousand dollars against loss by fire, from January 4, 1874, to January 4, 1875.

The policy contained among others, these conditions: "If the property be sold or transferred, or any change take place in title or possession, whether by legal process or judicial decree or voluntary transfer, or conveyance, in every such case this policy shall be void. Also, "When property has been sold and delivered or otherwise disposed of, so that all interest or liability on the part of the assured has ceased, the insurance on such property shall immediately terminate."

July 14, 1874, the building in question was destroyed by fire.

On the trial, the plaintiff gave testimony tending to show
that he had been the owner of the property in question since
1843, and was in possession at the time the building was de-
stroyed; that the loss thereby was upwards of thirty thousand
dollars; that notice and proofs of loss were made and given to
defendant; in short, evidence was given, tending to establish
every necessary element of a cause of action.

The defendant, in order to show that plaintiff, before the loss,
had ceased to be the owner or have any interest in the insured
property, gave in evidence a mortgage deed made by plain-
tiff and his wife to the United States Mortgage Company, a
corporation created by a statute of the State of New York for
the purpose of loaning money on bond and mortgage.   It ap-
peared that this mortgage was to secure a bond by plaintiff,
for a loan by said mortgage company to him of two hundred
and twenty thousand dollars, completed July 9, 1872, to be re-
paid in installments running through the period of ten years,
with interest at the rate of nine per cent. per annum.   The in-
struments covered, with other premises, those in question; gave
the mortgagee the right to declare the whole debt due on fail-
ure of plaintiff to pay any part of it when due, whether of
principal or interest, and contained the usual power of sale.

It was further shown by defendant that for an alleged de-
default in the plaintiff to pay interest, said mortgagee in Feb-
ruary, 1874, elected to declare the whole sum due, and adver-
tised the mortgaged premises for sale the last day of the then
next March.   They were then accordingly sold, James H. Rees
becoming the purchaser, to whom the mortgagee conveyed, and
he, April 20, 1874, conveyed the same premises to the president
of the United States Mortgage Company.

The court gave the jury this instruction: " The jury are in-
structed as matter of law, that the plaintiff's interest in the
insured property does, under the evidence in this case, appear
to have terminated or passed out of him at the time of the loss
by fire, so as to relieve the defendant company on that ground
from liability, and the jury will therefore, find the issues for
the defendant."

The jury found the issues for the defendant, and the court,

overruling plaintiff's motion for a new trial, gave judgment on the verdict, and plaintiff brings the case to this court by appeal.

Mr. F. H. Kales, for appellant; that when the contract of insurance was made, and when the loss occurred, that contract was valid, while the alleged mortgage was a nullity, cited Rev. Stat. 285; U. S. Mtg. Co. v. Gross, 12 Chicago Legal News, 23; Carrol v. East St. Louis, 67 Ill. 568; Metropoliton Bank v. Godfrey, 23 Ill. 604; Doyle v. Ins. Co. 4 Otto, 535.

The enabling act of 1875, cannot be allowed to invalidate the prior contract of insurance made in this case, because the act of April, 1875, confirming prior mortgages running to foreign corporations, did not, either expressly or by necessary implication, declare that other supervening acts or contracts should be terminated, or that a mortgage thus confirmed should, by operation of law, overreach and extinguish such contracts; had such a purpose been expressly declared by the confirmatory act, it would *quoad hoc* have been unconstitutional and void. Where the object, if expressed, would be illegal, the court will not imply such an object where the act is silent or admits of any other construction: Laws of 1875, 65; Constitution U. S. Art. I, § 10; Constitution 1870, Art. II, § 14; Cooley's Con. Lim. 472; Sedgwick's Con. Law, 164; U. S. Mortgage Co. v. Gross, 12 Chicago Legal News, 23; Satterlee v. Mathewson, 2 Pet. 380.

Plaintiff had an insurable interest, in the premises, which was not divested by the confirmatory act, passed subsequent to the loss: Strong v. Mfrs' Ins. Co. 10 Pick. 40; Case v. DeGoes, 3 Caines, 261.

Messrs. Miller & Frost, for appellees; that the mortgage was valid, cited U. S. Mtg. Co. v. Gross, 12 Chicago Legal News, 23; Carroll v. East St Louis, 67 Ill. 568.

The party borrowing money from a corporation forbidden by law to make loans in this State, should be estopped from setting up the plea of *ultra vires* against an action of foreclosure of a mortgage given as security for such a loan: Chicago B'ld'g Soc. v. Crowell, 65 Ill. 453; Bradley v. Ballard, 55 Ill. 413; Panck v. Wheeler, 22 N. Y. 494; Bissell v. South Mich.

22 N. Y. 258; DeGroff v. Am. Linen Co. 21 N. Y. 124.

Remedial statutes are to be liberally construed: Potter's Dwarris on Statutes, 73.

There is no constitutional objection to retrospective laws: Watson v. Mercer, 8 Pet. 88; Charles River Bridge Co. v. Warren Bridge, 11 Pet. 420; Planter's Bank v. Sharp, 6 How. 301; B. & S. R. R. Co. v. Nesbit, 10 How. 395; State Bank v. Knoop, 16 How. 369; Carpenter v. Commonwealth, 17 How. 456; Bissel v. City of Jeffersonville, 24 How. 287; *Ex parte* Garland, 4 Wall. 333; Stanley v. Colt, 5 Wall. 119; Croxall v. Shererd, 5 Wall. 268; Beloit v. Morgan, 7 Wall. 619; Gelpcke v. Dubuque, 1 Wall. 221; Satterlee v. Mathewson, 2 Pet. 380; Wilkinson v. Leland, 2 Pet. 627; Leland v. Wilkinson, 10 Pet. 294.

McALLISTER, P. J.  The questions in this case arise on the assignment of error upon the giving the instruction to the jury which the court below gave, to the effect that as matter of law upon the evidence, the interest of the plaintiff in the insured property had terminated or passed out of the plaintiff at the time of the loss by fire, so as to relieve the defendant from liability.

The evidence upon that point, was the mortgage by plaintiff and wife, to the United States Mortgage Company, delivered to the latter July 9, 1872, covering the insured premises, and a sale by the mortgagee and conveyance, to the purchaser under the power therein contained, in March 1874.  The charter of said mortgage company was in evidence.  It emanated from the legislature of the State of New York, and the purpose of incorporation was the loaning of money on real estate security.

At the time of the delivery of said mortgage, it was not only against the comity of the State of Illinois for foreign corporations to exercise such functions here, but their exercise was forbidden by statute.  The mortgage in question was therefore void from the moment it was delivered.  This point has been expressly decided by the Supreme Court of this State, in a case in which the same corporation was a party.  United States Mortgage Company v. Gross et al. 93 Ill. 483.

From that view it clearly follows, that plaintiff's interest in

the insured property was not divested or affected by a sale under an instrument which was void at the time it was made, and it is not probable the learned circuit judge, before whom the case was tried, held that such sale, *ipso facto*, divested plaintiff's interest. This brings us to the really difficult question in the case.

An act was passed April 9, 1875, which was in force July 1 of that year: "That any corporation formed under the laws of any other State or country, and authorized by its charter to invest or loan money, may invest or loan money in this State, and any such corporation that may have invested or lent money as aforesaid, may have the same rights and powers of recovery thereof, subject to the same penalties for usury, as private persons, citizens of this State; and when a sale is made under any judgment, decree or power in a mortgage or deed, such corporation may purchase, in its corporate name, the property offered for sale, and become vested with the title whenever a natural person might do so in like cases." Laws 1875, p. 65.

The policy of insurance from defendant to plaintiff was made January 2, 1874, insuring plaintiff's building in the sum of five thousand dollars, against loss by fire, from noon January 4, 1874, until noon January 4, 1875, the premium having been duly paid. The insured building was destroyed by fire in the second great fire of Chicago July 14, 1874. Between the time of the making of the policy and the loss of the property, a sale and conveyance were made by the mortgagee in said mortgage, under the supposed power therein contained; but the above confirmatory statute did not go into effect until July 1, 1875.

The mortgage being invalid, that is, void from its inception, it necessarily follows that the formal sale and conveyance thereunder were nugatory, having no effect upon plaintiff's interest in the insured property. That being the case, then, notwithstanding the provision in the policy that it should become void if plaintiff's interest in the insured property became divested, such sale and conveyance under a void mortgage did not operate to render the policy void, and it remained valid and effectual at the time said fire destroyed the insured property, and a cause of action had therefore accrued to, and a right

of action become vested in plaintiff, before the confirmatory statute was passed.

In passing upon the propriety of the instruction given by the court below to the jury, we must assume that a vested right of action in plaintiff was shown because the plaintiff had given evidence tending to establish every element of a cause of action, but the court by the instruction, withdrew the same from the consideration of the jury, by a peremptory direction to find for the defendant. The principal question should therefore be considered upon the assumption or basis that a right of action had become vested in plaintiff before the statute was passed. That vested right of action unquestionably arose upon a contract between the parties to the suit. Did the confirmatory statute passed long after, retrospectively take away that vested right of action? The answer to that involves two other questions: was it competent for the legislature to arbitrarily destroy such vested right of action? But assuming it was competent, should the mere general words of the statute, receive a construction which would so operate? Judge Cooley says: "But a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Where it springs from contract or from principles of the common law, it is not competent for the legislature to take it away." Cooley's Constitutional Lim., 4th ed., 449, and cases in note 5.

Kent says, "A retrospective statute affecting and changing vested rights is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature provided they do not impair contracts, or disturb absolute vested rights and only go to confirm rights already existing, and in furtherance of the remedy by curing defects, and adding to the means of enforcing existing obligations. 1 Kent's Com. *p. 455, and cases in notes.

The doctrine as laid down by that learned authority was under consideration in the case of The People, etc. v. The Supervisors, etc. 63 Barbour, 83, where the opinion of the court

was delivered by Mr. Justice Potter, the able editor of Dwarris on Statutes, and it was fully approved.

The intention of the Legislature derived from the language of the confirmatory act, was to confirm and validate prior loans made and securities upon real estate taken by foreign corporations, and to provide a remedy. We think the act was explicitly retrospective to the extent and for the purpose of validating such prior loans and securities; but that as to the remedy it was prospective only. There are no words which clearly show an intention that it should be retrospective as to acts *in pais*, which had been done under such invalid mortgages. The Supreme Court hold, that it was retrospective in respect to validating prior loans and securities, and that this was in the power of the Legislature to do. "Unless," says the court, "there be a constitutional inhibition, a legislature has power when it interferes with no vested rights, to enact retrospective statutes to validate invalid contracts, or to ratify and confirm any act it might lawfully have authorized in the first instance. Gross' case, *supra*. This is precisely within the doctrine as laid down by Kent. But it must be kept in mind, that there is a substantial difference between a statute which validates an invalid contract, and one which impairs the obligation of a valid one. The former is subject to no constitutional inhibition, while the latter is. As the Supreme Court of the United States said in Saterlee v. Matthewson, 2 Peters, 413, "It surely cannot be contended, that to create a contract, and to destroy or impair one mean the same thing."

The policy of insurance sued upon was a valid contract, under which, and the casualty happening, a right of action had accrued to, and become vested in the plaintiff. The mortgage was invalid, it was void. Now it was one thing to validate the latter, and quite another and different thing to impair the obligation of, and destroy the former.

Suppose that after the fire, notice and proofs of loss, but before the statute, plaintiff had begun suit on the policy by attachment, and thereunder seized defendant's property for the debt, but the latter without waiting for judgment, had paid to plaintiff the five thousand dollars insurance money, the loss exceeding that sum.

Under the facts and the law then existing, the money would have been legally and equitably due to plaintiff; the policy was valid and binding, and the casualty had happened which entitled him to five thousand dollars, and the whole of it. The money when so received by him, became his absolute property in possession. But afterwards this statute is passed; suppose then the defendant should demand the money back of plaintiff, and bring suit for its recovery. Could he maintain the action on the ground that the statute, acting retrospectively, validated the mortgage, the sale and conveyance thereunder; and that therefore, the insurance policy was rendered void before the loss, and plaintiff could not in equity and good conscience retain said money? Is it not clear to the legal mind that it would require the exertion of the same legislative power to give or create by a retrospective statute, a right of action to the defendant in that case, that would be necessary to take from the plaintiff his absolute vested right of property in the money so paid to him, and while in his possession, and transfer it back to the defendant? To have taken plaintiff's absolute right of property in the money, a tangible thing, by such retrospective legislation would clearly be violative of constitutional principles. But plaintiff's vested right of action to recover this insurance money was property to the same extent and in like manner protected, as would such absolute right of property in the money in his possession have been.

These propositions have been discussed to show that no such intention to have the statute operate retrospectively, to destroy vested rights, can properly be imputed to the legislature in respect to the statute in question. Retrospective acts which interfere with, and take away vested rights of property, are generally regarded as being against the principles of natural justice, even where there is no question as to the competency of the Legislature to pass them. For that reason, if the words are merely general, and they are not explicity retrospective in any particular, the courts will not so construe such general words as to give them a retrospective operation to take away rights of property, previously vested, although such works may be comprehensive enough to include the particular case. Be-

cause the result being against natural justice, the legislative intent to authorize, it must clearly appear. Gillmore v. Shuter 2 Md. 310; Couch v. Jeffries 4 Burr. 2461; Dash v. Van Kleek 7 Johns 477; Wood v. Oakley, 11 Paige, 403; Matter of Prot. Epis. School, 58 Barbour, 161; Williams v. Johnson, 30 Md. 500; Hooker v. Hooker, 10 Smedes & M. 599.

So the same reason supports the further rule. When a statute is explicitly retrospective to a certain extent, and for a certain purpose, it will not receive a retrospective operation to any greater extent, or for any other purpose. 9 Bac. Abr. Tit. Stat. p 221, Thames Man. Co. v. Lathrop, 7 Conn. 550.

The statute in question is explicitly retrospective only to the extent and for the purpose of validating prior loans and securities made and taken by foreign corporations. As to past acts *in pais* done under them, it is silent; as to remedies, it is prospective only; because it is not explicitly retrospective; and general words will not answer to make it retrospective to the taking away of plaintiff's vested right of action against the defendant. From these views it follows that the instruction in question was erroneous. The judgment of the court below must therefore be reversed, and the cause remanded for a new trial.

Reversed and remanded.